REEVES & CO. v. MARTIN.

No. 1898, Okla. T.   Opinion Filed March 27, 1908.

(94 Pac. 1058.)

1.   **CONTRACT—Construction—Forfeiture not Favored.** A contract will not be so construed as to work a forfeiture or preclude a party from exercising a right under it, if by any reasonable and fair construction the party claiming such right may be permitted to avail himself of the same.

2.   **EVIDENCE—Documentary—Copy Considered Original.** When three letters or notices are written simultaneously by the local agent of one of the parties to the action, signed by the same individual, containing the same words and addressed to the same person, the principal of said local agent, one being retained by said agent and the other by the party signing the same, and the other sent by registered letter to the principal, notice to produce the original paper in order to introduce one of the retained copies in evidence is not necessary. Such copy,

when offered to charge the party principal to whom the same was sent by mail, may be considered not as a copy, but as an original.

3. SAME—Presumptions—Receipt of Mail. When a letter is sent by post or mail, properly addressed, the presumption of its receipt by the party to whom it is addressed arises, and this prima facie presumption of delivery remains until overcome by contradictory evidence.

(Syllabus by the Court.)

*Error from District Court, Woods County.*

Action in replevin by Reeves & Co. against Hugh Martin. Judgment for defendant, and plaintiff brings error. Affirmed.

This is an action in replevin begun on the 10th day of August, 1903, by the plaintiff in error, as plaintiff, against the defendant in error, as defendant, in the lower court, and reference will herinafter be made to said parties as they appeared in said court.

In this action, based on two chattel mortgages to secure the payment of several promissory notes, possession of the following property was sought, to wit: Certain designated machinery; also six head of cows; one gray horse mule named "Jim," two years old; one gray horse mule named "Jack," three years old; one gray horse mule, two years old, named "Joe"; one bay horse, seven years old, named "Dan"; and one gray mare, eight years old, named "Mollie." Said notes were dated July 16, 1903, and due as follows: July 23, 1903, for $500; September 1, 1903, for $125; August 1, 1904, for $300; September 1, 1904, for $125; August 1, 1904, for $300; August 1, 1905, for $381.50; one chattel mortgage of same date; another mortgage dated the 20th day of July, 1903, covering all of said property, and, in addition thereto, the latter covered one Parsons feeder No. 12,059, and was to secure the payment of a note dated July 20, 1903, due November 1, 1903, in the sum of $156. By the terms of said mortgages, if default was made in the payment of any of said notes as they matured, or at any time the plaintiff deemed itself in-

secure, it was to become immediately entitled to the possession of said mortgaged property.

All of the property covered by said mortgage, except the live stock and the Parsons feeder, was ordered by the defendant from plaintiff on May 16, 1903, the terms of payment as set out in said written order being that the defendant would pay $500 in cash, and it further stipulated in the order that the machinery therein ordered is to be *warranted* by Reeves & Co. to be well made of good material, and with proper use and management to do as good work as any other machine of the same size manufactured for a like purpose; but, if inside of six days from the date of its first use the said machinery fails to fill said warranty, written notice shall be given Reeves & Co. by registered letter, and also written notice to the local agent from whom the same was purchased, stating wherein it fails to fill the warranty, and, if it be of such a nature that remedy cannot be suggested by letter, a reasonable time shall be allowed to get to the machinery to remedy the defects, if any there be, and an opportunity offered for a trial thereafter.

" *. * * It is mutually agreed that the failure of the purchaser to give said written notice of defects, as provided above, within six days from the day of its first use, or to return the said machinery or part to the place whence it was received within six days from the day of its first use, shall be conclusive evidence of the fulfillment of the warranty and full satisfaction of the purchaser, who agrees to make no claim thereafter against Reeves & Co., or to make any defense to the notes given therefor on account of any breach of the warranty. It is further agreed that, if the machinery, or any part thereof, is delivered to purchaser before settlement is made for same, as herein agreed, or any alteration, erasure, or waiver is made in the warranty, or in this special understanding or agreement, the purchaser waives all claims under the same. It is also agreed and understood that no agent or employe of Reeves & Co. (officers of the company not included) is authorized to modify, change, or alter this warranty or any part thereof. * * *."

The general office of Reeves & Co. is at Columbus, Ind.

Thereafter, on the 16th day of July, A. D. 1903, the day the property was delivered into the possession of the defendant after the above-mentioned notes and mortgages of that date were executed as consideration therefor, and said $500 note being in lieu of the $500 to be paid in cash. Both of said chattel mortgages were duly filed for record, the former on the date on which it was executed and the latter on the 28th day of July, 1903.

Plaintiff's petition in said cause was filed in the district court of the county of Woods, territory of Oklahoma, on the 4th day of August, 1903. On the same date affidavit in replevin in due form was filed, and a writ in replevin covering the property hereinbefore described or referred to was issued, and all of said property was taken from the possession of the said defendant. And thereafter, on the 23rd day of November, 1904, defendant filed his amended answer, in part as follows:

"Said defendant, Hugh Martin, for his amended answer to plaintiff's petition herein, denies each and every material allegation therein contained, except such as are hereinafter specifically admitted:

"First. Defendant admits the manual execution of the chattel mortgage described in plaintiff's petition.

"Second. Defendant, further answering, alleges that the chattel mortgage described in plaintiff's petition, and the notes for which same was given are fraudulent and void, in this: That the chattel mortgage was given by said defendant to said plaintiff to secure the payment for the threshing machine, engine, and fixtures mentioned in plaintiff's petition; that said machine, engine, and fixtures were sold to said defendant on a warranty made by said plaintiff, whereby the said plaintiff warranted said machine:

" 'To be well made of good material, and with proper use and management to do as good work as any other machine of the same size manufactured for a like purpose; but, if inside of six days from the date of its first use the said machinery fails to fill said warranty, written notice shall be given Reeves & Co. by registered letter, also written notice to the local agent from whom the same was purchased, stating wherein it fails to fill the warranty, and, if it be of such a nature that remedy cannot be suggested by let-

ter, a reasonable time shall be allowed to get to the machinery to remedy the defects, if any there be, and an opportunity offered for a trial thereafter; the purchaser rendering necessary and friendly assistance. Defects or failures in one part shall not condemn any other part or attached machine, and, if after a fair opportunity to remedy a defect the part or parts containing such cannot be made to fill the warranty, that part which fails shall be returned immediately by the purchaser to the place where it was received, with the option in the company either to furnish another machine or part in place of the machine or part so returned, or credit the settlement with same. If Reeves & Co. shall furnish another machine or part in place of the one returned, the terms of this warranty shall be held to have been fulfilled, and the company shall be subject to no further liability under this order. It is hereby expressly agreed that all claims for damages against Reeves & Co. by reason of the non-performance of machinery above are hereby waived. It is mutually agreed that the failure by the purchaser to give said written notice of defects, as provided above, within six days from the day of its first use, or to return the said machinery or part to the place whence it was received within six days from the day of its first use, shall be conclusive evidence of the fulfillment of the warranty, and full satisfaction of the purchaser, who agreed to make no claim thereafter against Reeves & Co., or to make any defense to the notes given therefor on account of any breach of the warranty. It is also expressly agreed that if at any time after the expiration of the six days from the day of its first use Reeves & Co. should furnish to the purchaser any improvements or attachments for said machinery, or replace any old parts with new, or should the purchaser notify Reeves & Co., in any wise whatever, of any imperfections in said machinery, and if on receipt of such notice Reeves & Co., or any agent or employe, should act thereon and remedy, or attempt to remedy, such imperfections, the so doing of all such acts will not extend the liability of Reeves & Co. under this warranty beyond the expiration of six days from the day of the first use. It is further agreed that if the machinery or any part thereof is delivered to purchaser before settlement is made for same, as herein agreed, or any alteration, erasure, or waiver is made in the warranty, or in this special understanding or agreement, the purchaser waives all claims under the same. It is also understood and agreed that no agent or employe of Reeves & Co. (officers of the company not included)

is authorized to alter, change, modify, or waive this warranty, or any part thereof, or to make any other or different warranty, or that any notice to any agent or employe of Reeves & Co., or any act at any time, or any agent or employe, shall not constitute a waiver of the written notices herein provided for, nor 'a waiver of any other stipulation in this warranty. Workmen, salesmen, and mechanical experts employed by Reeves & Co. in and about, starting, adjusting, and repairing said machinery, are not agents of Reeves & Co., and it is hereby mutually agreed that Reeves & Co. are not bound by any statements, admissions, promises, or declarations made by them 'or any of them in reference to said machinery. By the title or name "Reeves & Co." in this warranty, it is understood to mean Reeves & Co., of Columbus, Ind., only.'

"That said above warranty is printed and signed by said plaintiff; that said machinery wholly failed to do the work for which it was intended, and was utterly worthless for the purpose for which it was bought and sold; that said defendant has complied with the terms of the agreement imposed upon him by said warranty and the performance of the conditions required of him by the terms of the written instruments above set out, and has duly performed all the conditions of said contract on his part; that said defendant gave written notice of the failure of said machine to be and to do the work as warranted to the said plaintiff at its office at Columbus, Ind., and its local agent at Alva, Okla. T. That said defendant wholly failed, neglected, and refused to make good its warranty or any part thereof. That after endeavoring with proper management to cause said machinery and engine to work properly, and after having failed so to do, and after said plaintiff has violated the contract on its part in refusing to make good its warranty as to the performance of the acts mentioned in the contract of warranty, said defendant tendered the threshing machine, engine, and fixtures to said plaintiff.

"Third. For a third answer and ground of defense said defendant alleges that, relying upon the promise and agreement of said plaintiff that it would furnish him the engine, separator and necessary fixtures, said plaintiff, in violation of said contract, sold, without the defendant's knowledge or consent, a certain tender to said engine which tender was necessary to the proper running and management of said threshing machine.

"Fourth. Said defendant for a fourth ground of defense alleges that said chattel mortgage and notes mentioned in plaint-

iff's petition were each and all, given without any consideration and are void. Wherefore, defendant prays judgment for the return of the six head of cows and the five head of horses and mules described in said pretended chattel mortgage, and that if the same cannot be delivered in kind that he have judgment against the plaintiff in the sum of fifteen hundred dollars ($1,500) and for the further sum of one thousand dollars ($1,000) as damages sustained by him, for the costs of this action and for a reasonable attorney's fee."

Thereafter, on the 12th day of January, 1905, plaintiff filed its reply to the second and third paragraphs of defendant's answer. Thereafter, on the 20th day of February, 1905, trial was begun and had in said court, and judgment was rendered in favor of the defendant for the possession of the six head of cows, one yellow horse mule, two gray horse mules, one bay horse, and one gray mare, to the value of $495.

On the 20th day of July, 1903, defendant began to use the same, and afterwards, on the 25th day of the same month, he gave written notice to the local agent of the said plaintiff, and also to the said company at its home office in Columbus, Ind. The notice to the home office was by registered letter as follows (Exhibit M):

"U. G. Nighswonger, Dealer in Hardware and Implements. Alva, Oklahoma, July 25, '03. Reeves & Co., Columbus, Indiana —Dear Sirs: I cannot control my machine in regard to saving the grain. Please send a man to adjust it at once. We can't keep from wasting the grain. Very truly yours, Hugh Martin."

The evidence further tended to show that the said notice or letter hereinbefore referred to as "Exhibit M" was a triplicate of the one sent by registered letter on July 25th, addressed to Reeves & Co., Columbus, Ind., and written simultaneously by U. G. Nighswonger, the local agent of the plaintiff at Alva, Okla. At least two of the triplicate copies, and probably all of them, were signed by Hugh Martin through his wife, who was duly authorized thereto; one of the triplicate copies being retained by the said local agent, another by the defendants wife for himself, and the other by proper registered letter, duly mailed

to the plaintiff at its home office in Columbus, Ind. The copy retained by defendant, after being identified and proved by plaintiff's local agent, on being offered in evidence by defendant, was excluded on motion of plaintiff. It further tends to show that the machine failed to do the work for which it was designed and purchased, and that it did not measure up to the terms of the warranty; that the defendant, through his wife, duly authorized thereto, notified the proved local agent of the plaintiff. Otherwise the proof in this case was conflicting, tending to support the contention of both parties as to the issues presented. At the close of the evidence on the part of the defense, plaintiff interposed a demurrer to the evidence of the defendant, and also a motion for judgment for the plaintiff. Both the demurrer and motion were overruled and exception saved.

The court charged the jury, among other things, as follows:

"No. 4. The contract containing this warranty, however, has another provision which is that, if inside of six days from the date of its first use the said machinery fails to fill said warranty, written notice shall be given to Reeves & Co., by registered letter, and also written notice to the local agent, from whom the same was purchased, stating wherein it failed to fill the warranty, and, if it be of such a nature that a remedy cannot be suggested by letter, a reasonable time shall be allowed to go to the machinery to remedy the defects, if any there be, and opportunity offered for a trial thereafter, the purchaser rendering necessary and friendly assistance. Defects or failures in one part shall not condemn any other part or attached machine, and if after a fair opportunity to remedy a defect, the part or parts containing such cannot be made to fill the warranty, that part which fails shall be returned immediately by the purchaser to the place where it was received, with the option in the company either to furnish another machine or part in the place of the machine or part so returned, or credit the settlement with the same. Now, by the provisions of this contract in warranty which has been introduced in evidence, the plaintiff in this case warranted this machine to be well made, of good material, and, with proper use and management, to do as good work as any other machine of the same size, manufactured for a like purpose. It was the duty of the defendant, under this

contract, to take that machine and set it up and proceed with it to thresh grain. Then, if the machine did not do good work, as provided in this contract, it was his duty to send written notice to the company by registered letter, and also to notify the local agent, stating in substance the complaint. I will not attempt to use the language of the contract, but a reasonable time under the contract must have been given in order that the company might have an opportunity to remedy the defect.

"No. 5. The defects against which the company in the contract warranted the machine were, of course, defects in the machine. The company did not agree that any one particular person or any number of persons could run this particular machine; but the object and purpose of the guaranty is to warrant the machine to do proper work with proper management, so that in order for the defendant to successfully defend this action, if at all, he must not only show that the machine did not work well in the particulars named in the evidence, and which are covered by the warranty, but he must go farther, and show that it not only did not work well, but that the defect or the trouble was because of the machinery itself, and not because of the handling of the machine. If the trouble was with the management of the machine, or the man who worked with the machine, and not a defect of the machine itself, then of course, the plaintiff was not at fault. You must find that fact from the evidence that has been introduced here in this trial, whether the machine or the operator was at fault.

"No. 6. If you find that this machine filled the conditions of the warranty, and that there was no defect in the machine, as claimed by the defendant—that is to say, if it did not waste grain, or if it would not have wasted grain with proper management—then that is as far as you need go in the case. Your verdict in that event should be for the plaintiff.

"No. 7. But if you find that the machine was defective in construction, and would not, with proper management, save grain properly, but would blow it over into the straw to an extent that was unusual—that is, to an extent that it would not do as good work as any other machine of the same size, manufactured for a like purpose—then you may go further and investigate the proposition as to whether or not the defendant gave the notice to the company that is provided for in the contract, by registered letter, and the notice to the local agent, as provided in the contract.

"No. 8. If you find from the evidence that the defendant did

not give this notice by registered letter to the company and notice in writing to the local agent, even though you find the machinery was defective in its construction, then you will stop there, because, if this notice was not given, the defendant cannot recover, or cannot successfully defend in this action, because it was his duty to give that notice, as he had contracted to do.

"No. 9. If, however, you find from the evidence that the machinery was defective, and that the defendant did not give this notice, as provided in the contract, then the plaintiff, as I stated before, would be entitled to a reasonable time within which to remedy the defect, if it could be done, and likewise the defendant would be entitled to wait a reasonable time in order to give the plaintiff an opportunity to comply with its side of the contract, for which he had given notice of the defect. Now, after waiting a reasonable time, if the plaintiff failed to remedy, the defendant then, in order to protect his rights and to comply with the law governing the conditions of the contract in this respect, it would be the duty of the defendant to return the machine to the place provided in the contract; that is, to the place from which it was taken. If, then, you find that the machinery was defective, that the notice was properly given, that the plaintiff failed to remedy the defect, the defendant could under those circumstances rescind the contract by returning the machine, under the conditions of the contract, within a reasonable time.

"No. 10. Under the law the defendant, in case the machine proved to be defective and he had given the notice to the plaintiff company and to its local agent, and the plaintiff had failed to remedy the defect, would be under the duty then to rescind promptly; that is, return the machinery promptly upon discovering the facts which entitle him to rescind, and he must restore to the plaintiff in this case the property that he had received; that is, he must return it to the party from whom he received it, restoring to the plaintiff everything that he had received from it, within reasonable time.

"No. 11. What would be a reasonable time in this case would depend, of course, upon the circumstances of this particular case. It is claimed by the defendant that, before the time had arrived which the defendant was required to wait for the company, the plaintiff, to respond to the notice that is claimed to have been given, and before he was required to act, before the time had arrived at which he was required to act in the way of

rescinding this contract and returning the machine, that the plaintiff took the machine away from him by this action.

"No. 12. The court instructs you that if you find from the evidence that this action was commenced at a time prior to which the defendant would be required, under the law as I have instructed you, to return the machine, then, of course, the defendant will be excused from his duty to return the machine, because the law does not require the defendant in this case to return the machine, if defects are found to have existed, until the company has had time to respond to the registered letter and has had time to remedy the defects, and if the machinery is taken from the defendant by the act of the plaintiff, through process of law before the time arrives, then, of course, the defendant would be excused from a necessity of making a return of the machine. That fact, however, does not prevent the plaintiff from commencing this action, if it otherwise had a right to commence it; that is to say, if there was a default in the payment of the note, and it had a right to demand payment, then the plaintiff had a right to foreclose the mortgage, and, in order to do so, would not be obliged to wait until the provisions of this contract of warranty were fulfilled, or the time had elapsed in which they should be fulfilled by either party.

"No. 13. If, however, you find from the evidence that the machine did not fill the conditions of the warranty, and the defendant gave the notice, and before the time had arrived at which the defendant was required to wait, and the company was allowed to come and fix it, and also that the suit was commenced before those things had come about, then under such conditions, the defendant having the right to rescind and having rescinded, that would avoid the entire contract—that is to say, the contract and the mortgages, under such circumstances would be avoided—and the plaintiff would not be entitled to the possession of the property, so that, summing the entire matter up, if you find that the machinery here did not do the work, did not fill the conditions of the warranty, and that the notices were given, and that the suit was commenced and the machinery taken from the possession of the defendant before the time had arrived within which the plaintiff was allowed to come and remedy it, then your verdict will be for the defendant.

"No. 14. Your verdict, however, in this case should only be for the defendant for the possession of the property outside of the

machinery; that is, the horses, cows, and mules, whatever they are, because that is all he is entitled to claim, and all he does claim here.

"No. 15. Now, further, if you find for the plaintiff—that is to say, at the time of the commencement of this suit, the plaintiff was entitled to recover because of its mortgage—then the question of value of the property will be immaterial, because the plaintiff has taken the property and kept it in this case. But if you find for the defendant, and find that at the time of the commencement of this action the defendant was entitled to the possession of the property taken, then it will be your duty to find the value of the property; that is, the horses, cows ,and mules."

Motion for a new trial was duly made and overruled, and exceptions properly saved, and this cause is now before this court on petition in errror.

*Snoddy & Son*, for plaintiff in error.
*Cowgill & Dunn*, for defendant in error.

WILLIAMS, C. J. (after stating the facts as above). It is first contended by plaintiff in error that the defendant was bound, as a condition precedent, to pay the $500 note when it matured before he could avail himself of the benefits of the stipulation of warranty against plaintiff, and rescind said contract, citing some authorities in support of its contention. On an examination we find that the authorities referred to have no application to the facts in this record. Whilst it is true that in the original order for the machinery defendant agreed to pay $500 on said machinery in cash, but subsequent thereto the plaintiff arranged to take a note therefor in like sum, due at a subsequent date, which, in connection with the other notes for the purchase money for said machinery, was secured by the two chattel mortgages heretofore referred to, the plaintiff thereby waiving the cash payment. Further, there is nothing in said mortgage that indicates that it was the understanding or intention of the parties that said $500 note should be paid regardless of whether or not the machinery measured up to the conditions of the warranty, or that the plaintiff

complied fully with its contract and terms of guaranty as a condition precedent to asserting his rights under said agreement. The proof without contradiction shows that one Nighswonger was the local agent of the plaintiff at Alva, and, when informed by defendant's wife of the defect in the machinery and its failure to do the work it was guaranteed to do, he wrote and prepared the notice in triplicate heretofore referred to, retaining one, and the defendant, through his wife as agent, sent another by registered letter to the plaintiff at its home office in Columbus, Ind., and delivered the other one to her husband. On defendant's theory of the case, who was first in default? If it was the duty of the plaintiff to furnish the machinery in accordance with its contract, and had failed to do so, although duly notified, why should defendant be precluded from asserting his rights because within the time he had to test the machinery, before the $500 note finally matured, including the days of grace, he found it defective, and not in accord with the warranty, and therefore refused to pay until the machinery was made to comply with the stipulations of the contract? When he made and delivered the $500 note, the machinery was to be as warranted, and if he ascertained different, and as a result of said discovery failed to pay said note, awaiting the action of the plaintiff in making good its warranty, he certainly forfeited no rights thereby. Forfeitures are not favored, and a construction working a forfeiture, if there is any other reasonable construction to be made, is not to be favored or adopted. *Baley v. Homestead Fire Ins. Co.,* 80 N. Y. 21, 36 Am. Rep. 570.

It is further contended by plaintiff in error that there was no proof to show that the defendant had given the written notice to plaintiff's local agent, and also to the plaintiff by registered letter of the defect in the machinery. In reference to this notice, the defendant testified as follows:

"Q. When this machine failed to do the work for which you desired and purchased it, what did you do? A. I notified the company. Q. Did you notify any one else? A. I notified the local agent here. Q. Who is the local agent? A. Mr. Nigh-

swonger was at that time.   Q.   And the company is at Columbus, Ind.?   A.   Yes, sir."

On cross-examination the defendant further testified to sending the company a registered letter, and stated in reference to a conversation with Mr. Tobin, the general agent of the company:

"I told him the machine was not doing good work, and asked him if he had heard from the company—from the registered letter I sent them to that effect."

And, further, on cross-examination, the defendant testified:

"Q.   Why didn't you tell them then and there that the machine was absolutely worthless for the purpose for which you purchased it, and you wouldn't give them any mortgage on your farm? A.   I did notify the company.   Q.   You never notified the local agent, you say?   A.   I did notify the local agent.   Q.   Did you tell her (referring to his wife) when she went to town to notify the company as to the fault in the engine and machine?   A.   I did.   I told her to notify the company I couldn't control the machine in regard to saving the grain."

Defendant's wife corroborated her husband as to the foregoing.   In addition, the defendant introduced a registry receipt showing that on the 25th day of July, 1903, a letter was registered from the defendant to the plaintiff at its home office in Columbus, Ind., at the post office at Alva.   However, in view of the conclusion hereinafter reached, it is not necessary to determine whether or not this was sufficient proof to require the submission to the jury for its determination as to the notice required to be sent by registered letter.   The defendant offered in evidence a triplicate copy of the letter which was written by the said Nighswonger, the local agent of the plaintiff at Alva, where the machinery was ordered, the defendant's name. being signed thereto by his wife, who was duly authorized thereto; one of the triplicate copies being retained for the defendant, and another by the said local agent, and another sent by registered letter as was evidenced by said registry receipt heretofore referred to, to the plaintiff at Columbus, Ind.

.Defendant in his answer alleges that he gave written notice of

the failure of said machine to be and do the work as warranted to the said plaintiff at its home office at Columbus, Ind., and its local agent at Alva, Okla. This triplicate copy was excluded from the consideration of the jury by the trial court on the theory that no proper notice had been served upon plaintiff by the defendant to produce the original upon the trial of said cause. In the case of *Commonwealth v. Messinger et al.*, 1 Bin. (Pa.) 273, 2 Am. Dec. 441, the defendants were indicted charged with stealing a bill obligatory for 175 pounds. On appeal, in speaking of this question whether or not parol evidence was admissible to prove the contents of the bill obligatory described in the indictment, without having given notice to the defendants or one of them, in whose hands it was, to produce at the trial, the court said:

"He [referring to the defendant] is informed by the indictment in what manner the paper in his possession is described, and, if it is not truly described, he has it in his power to show it. This in effect is notice. *  *  *"

See, also, 1 Greenleaf on Evidence, § 40. In this case the defendant alleged in his answer that the plaintiff had been notified in writing of the defect in the machinery. Upon the same theory it might be contended that this allegation put plaintiff upon notice that upon the trial of said cause the defendant would contend that he had notified plaintiff of the defects, as provided in the contract of warranty; but it is not necessary in this case for us to determine whether under such circumstances the allegation in defendant's answer would be sufficient notice. It further might be contended that the three copies prepared by plaintiff's local agent were each triplicate originals. In the case of *Hubbard v. Russell* 24 Barb. (N. Y.) 408, it is said:

"The letter retained by plaintiff's attorney and that sent by him to the defendants were duplicates. They were written simultaneously, signed by the same individual, contained the same words, and were addressed to the same person. Each was an original— the one retained as much as the one sent. In the case of *Ivry v. Orchard*, 2 Bos. & Pul. 39, the plaintiff's attorney made out two papers (notices) precisely to the same effect, and signed them

both for his client, one of which he delivered to the defendant, and the other, which was produced on the trial, he retained, and it was held that the one retained might be given in eivdence, without proving any notice to produce the other.   Lord Eldson said that the strong inclination of his opinion was that the paper retained was a duplicate original.   That the practice of allowing duplicates of this kind to be given in evidence seems to be sanctioned by this principle that, the original delivered being in the hands of the defendant, it is in his power to contradict the duplicate original by producing the other if they vary.   *   *   * Starkie (volume 2, 275) quotes this decision with approbation, and says : 'It seems to be sufficient in all cases to prove the service of a duplicate notice.' "

However it is not necessary for the proper determination of this case to rest this matter upon that point.

In the case of *Carroll v. Peake,* 1 Pet. (U. S.) 21, 7 L. Ed. 36, it is said:

"The bill of exceptions does not put the objection to the papers offered in evidence distinctly upon the ground that, being a copy, it could not be used without timely notice to produce the original.   Although some doubt exists whether the objection ought not have been placed on that ground, in the court below, in order to make it available here, yet, as the whole argument has proceeded in this court upon the assumption that the question is sufficiently raised upon the bill of exceptions, we will so consider it.   The principle relied upon is that copy cannot be given in evidence if the original be in the possession of the adverse party, unless timely previous notice has been given him to produce it at the trial.   This is certainly true as a general rule. But in examining the numerous adjudged cases to be found in the books, in which this general rule has been asserted and applied, we have been able to find no case just like this.   They are all cases where the copy offered had not been made by the party against whom it was attempted to be used.   This is a case in which the execution of the original is distinctly admitted; and the paper called a copy is admitted to be wholly in the defendant's handwriting.   From the nature of the transaction he was entitled to, and must be presumed to have, the custody of the original. The copy, made out by himself, must be presumed to have come to the plaintiff's possession by the defendant's own act; and, by

making and delivering it to the plaintiff, the defendant consents that it shall be genuine and true. We think that under the circumstances this case forms a just exception to the general rule, and that it is not competent for the defendant below to allege against his own acts and admissions that this paper does not, or may not, contain all the verity and certainty of the original. So far we have considered this paper as if it ought to be regarded in the light of a copy. But we think that is not its true character as it was presented to the court and jury. We think that, under the circumstances, and to the purposes for which it was offered, it may fairly be regarded as an original."

In the case before this court the three triplicate copies, which may properly be termed triplicate originals, were made or written simultaneously by the local agent of the plaintiff in error, and the defendant's name was signed thereto by his wife in the presence of the said agent. One was left for the local agent, and the other two were delivered by its local agent to the defendant's wife, one copy, of course, to be retained by the defendant, and the other to be sent by registered letter to the plaintiff at Columbus, Ind. We conclude that, under such circumstances, this case forms a just exception to the general rule; and that it was not competent for the plaintiff to allege against the acts of its local agent that this paper does not, or may not, contain all the verity and certainty of the original, for the agent of the plaintiff on the witness stand swore that he made these triplicate originals, and that they were exact copies. There is no conflict as to this. We think that under the circumstances, and for the purpose for which it was offered, it may be fairly treated as an original.

"Where the instrument to be produced and that to be proved are duplicate originals, prior notice to produce is not necessary, for, in such case, the original being in the hands of the opposite party, it is in his power to contradict the duplicate original by producing the other if they vary." (1 Greenleaf on Evidence, § 561.)

That said letter was registered by mail, addressed to the plaintiff at Columbus, Ind., there is no conflict. The question might arise, however, as to why the defendant did not introduce

the return registry receipt to show actual delivery to plaintiff. Evidently the letter or notice was when registered in an envelope marked, "Return to U. G. Nighswonger"; for the receipt was made out in favor of said Nighswonger, and afterwards the original receipt was changed to Hugh Martin, but no change was made on the carbon copy of said receipt, and the assistant postmaster testifies that the return registry might not have been changed, and in that event it would have been returned to the local agent, instead of the defendant.

"If a letter is sent by post, it is presumed from the known course in that department of the public service that it reached its destination at the regular time, and received by the person to whom addressed." (1 Greenleaf on Evidence, § 40; *Breed* v. *First National Bank*, 6 Colo. 235.)

We necessarily conclude that said letter should not have been excluded from the consideration of the jury, and, with said letter before the jury with such presumption of delivery, there was proof of notice to plaintiff in accordance with the terms of the contract of warranty. In the case of *Jobbins v. Gray*, 34 Ill. App. 219, the court says:

"Under the circumstances the court ought to have admitted the testimony. But the evidence is preserved in the record, and we can see from it that the plaintiff had a good and perfect title to the land. Appellant cannot be allowed to procure an erroneous ruling in his favor and exclude competent and material evidence on the trial when it is offered and ready to be produced, and then on appeal insist that for the want of that very proof the decree cannot be sustained. A party will never be allowed to so take advantage of his own wrong, or the errors of the court induced on his own motion, and then compel the opposite party to suffer the consequence. Such a proceeding would be the merest trifling with the court."

It is contended, however, that said notice to plaintiff was not specific and full enough, but, the provision of such a contract being intended for the benefit of plaintiff, it was certainly specific enough to put the plaintiff on inquiry, and, if it failed to avail itself of such notice and in good faith attempt to mend or cure any

defects, but stood on its rights, viewing the matter from a technical construction, it did so at its peril. *Baker v. Nichols & Sheppard Co.,* 10 Okla. 689, 65 Pac. 100.

The instructions of the court fairly submitted the issues. There appears no reversible error in the record. Let the judgment of the lower court be affirmed.

Hayes, Kane, and Turner, JJ., concur; Dunn, J., disqualified, not sitting.