HAROLD J. LORCH ET AL. *vs.* CHARLES W. PAGE.

First Judicial District, Hartford, October Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

General Statutes, § 6119, relating to summary process, provides that "duplicate copies" of the notice to quit shall be made, one of which shall be served upon the lessee. *Held* that this provision required the notice to quit to be prepared and signed in duplicate by the lessor or his legal representative, and the service of one of these duplicates or originals upon the lessee; and therefore that service of a mere true and attested copy of the notice, presumably made by an officer or indifferent person, was not a compliance with the statute.

This construction of the statute is fortified by the practice of a hundred years or more, which in itself is cogent evidence of the meaning of "duplicate copies."

Submitted on briefs October 4th—decided December 23d, 1921.

Lorch *v.* Page.

WRIT OF ERROR to reverse a judgment of a justice of the peace in an action of summary process in favor of the landlord, brought by the tenants to, and tried by, the Court of Common Pleas in Litchfield County, *Woodruff, J.*, which found error in the judgment of the justice of the peace and reversed it, and from this judgment of reversal the landlord appealed. *No error.*

The complaint in the summary process action before the justice of the peace, alleged that the lessor, Page, plaintiff therein, gave due notice to the lessees, Lorch *et al.*, defendants therein, in the manner prescribed by statute, to quit possession of the premises on or before July 1st, 1920. The defendants denied this allegation and further pleaded, in effect, that no notice was left with them other than a document which by the sheriff's return thereon purported to be "a true and attested copy of the original notice," but was not a duplicate of the original notice.

The parties went to trial without demurring or joining issue upon this special defense. On the trial, as appears in the bill of exceptions, Page offered in evidence the original copy of a notice to quit, viz.: "To Harold J. Lorch and Mary E. Lorch, each of the town of Kent; I hereby give you notice that you are to quit possession of the land, buildings, and premises now occupied by you and owned by me (which land, buildings and premises are located at South Kent, Town of Kent, County of Litchfield and State of Connecticut) on or before the first day of July, 1920. Dated at New Milford, Conn., this 18th day of June, 1920.

    "Charles W. Page,

"By John S. Addis, His attorney."

Upon this notice was endorsed:

"State of Connecticut,  &#125; ss. Kent, June 19, 1920.
"County of Litchfield. &#125;

"Then and there I left at the usual place of abode of

Harold J. Lorch and Mary E. Lorch a true and attested copy of the original notice to quit possession.

"Attest:
"Frank J. Horsford,
"Deputy Sheriff."

The defendants Lorch objected, because the sheriff's return showed that they received only a copy of the original notice to quit, whereas the statute required that duplicate copies must be made, one of which must be served upon the defendants. The court overruled the objection and admitted the notice over the defendants' objections. No other proof of service of the notice to quit was offered.

A writ of error was taken from the judgment of the justice of the peace in favor of plaintiff Page, to the Court of Common Pleas, where the court held that the justice erred in admitting the notice and in rendering judgment for Page, upon the ground that the notice to quit served upon Lorch was not a duplicate copy of the notice to quit required by the statute. From this judgment Page, defendant in error, appealed.

*John S. Addis* and *Leonard J. Nickerson,* for the appellant (defendant in error).

*Robert J. Woodruff,* for the appellees (plaintiffs in error).

WHEELER, C. J. The trial court sustained the plaintiffs in error Lorch, in their claim that the notice to quit served upon them was not a legal notice, in that it was not a "duplicate copy" but was merely a true and attested copy of the original notice. No other proof of service of the notice to quit was made than the officer's return. In the statute as first enacted (Public Acts of 1806, p. 729) it was provided that a

duplicate copy of the notice should be delivered to the lessee, or left at his place of residence, "in the presence of at least one credible witness." In the Revision of 1875, p. 491, the words "by a proper officer or indifferent person" were substituted for "in the presence of at least one credible witness"; so that this portion of the statute has since read: "Duplicate copies of such notice shall be made, one of which shall be delivered to the lessee, or left at his place of residence, by a proper officer or indifferent person," and since this Revision the service of the notice to quit has been by an officer or an indifferent person. Conforming to service in civil actions, the return of the officer or indifferent person made upon the duplicate copy not served upon the lessee, has been accepted as prima facie proof of the fact of service.

The sole question raised upon the appeal is whether a true and attested copy of the original notice is the "duplicate copy" of the notice to quit which the statute requires to be served in order to constitute a legal notice. Under our law this statutory remedy is to be construed strictly. *Colt* v. *Eves*, 12 Conn. 242, 259; *White* v. *Bailey*, 14 Conn. 271.

"Duplicate" as applied to any form of written instrument, has a determined and unvarying meaning. Burrill's definition has been frequently approved and quoted by the courts of this country. "That which is double, or twice made; an original instrument repeated. A document which is the same as another, in all essential particulars. . . . Sometimes defined to be the *copy* of a thing; but, though generally a copy, a duplicate differs from a mere copy, in having all the validity of an original." 1 Burrill's Law Dictionary (Ed. 1859) p. 526. Bouvier's Law Dictionary (Vol. 1, Rawle's 3d Rev.) p. 958, defines it as: "The double of anything. A document which is essentially the same as some other

instrument. . . . A duplicate writing has but one effect. Each duplicate is complete evidence of the intention of the parties." The War Revenue Act of 1898, required a stamp to be affixed to each bill of lading and to each duplicate thereof, and the Circuit Court of Appeals thus construed the word duplicate in this Act: "We cannot help thinking that in the business world there is a plain distinction recognized between a duplicate and a copy, and that the former is understood to be one of two instruments, each of which is original, and intended to have the force of an obligation irrespective of the other, and that a copy is understood to be a transcript of an original; having the form, but not the essence, of an obligation." *Wright* v. *Michigan Cent. R. Co.*, 65 C. C. A. 327, 330, 130 Fed. Rep. 843, 846. The court cites as its authority, Burrill's definition and that in 10 Amer. & Eng. Ency. of Law (2d Ed.) 318, where "duplicate" is defined as "a document which is the same in all respects as some other instrument, from which it is indistinguishable in its essence and operation." The laws of a fraternal order provided that when a beneficial certificate is lost or destroyed, the member insured is entitled to a duplicate certificate. In determining that the new certificate issued was not a duplicate certificate, the court said: "A duplicate has been judicially defined to be an original instrument reproduced, not a new agreement, but merely written evidence of the lost instrument to take its place. It must be the same in all other respects as some other instrument from which it is indistinguishable." *A. O. U. W.* v. *McFadden*, 213 Mo. 269, 287, 111 S. W. 1172. The statute of Michigan required an assignment for the benefit of creditors, or a duplicate, to be filed with the county clerk. The court held that "a filing of a copy of the assignment, instead of an original or a duplicate, was not a compliance with

the statute. A copy is a transcript of an original writing . . . and may be made by anybody. A copy cannot be given in evidence unless proof is made that the original is lost, or is in the power of the opposite party. While a duplicate is the double of anything. . . . It is either one of the two originals, both of which are executed by the same party or parties, and may be offered in evidence." *McCuaig* v. *City Savings Bank,* 111 Mich. 356, 358, 69 N. W. 500. In *Grant* v. *Griffith,* 39 N. Y. App. Div. 107, 56 N. Y. Supp. 791, the court, construing the word duplicate in an Act providing that the contract for the sale of certain articles should be in duplicate, held that an execution in duplicate meant that there must be two originals of the same tenor, so that a copy would not be a duplicate. *State ex rel. Graef* v. *Forest County,* 74 Wis. 610, 43 N. W. 551; *State ex rel. Fenelon* v. *Graffam,* 74 Wis. 643, 43 N. W. 727; *Dakota Loan & Trust Co.* v. *Codington County,* 9 S. D. 159, 68 N. W. 314; *Maston* v. *Glen Lumber Co.* (Okla.), 163 Pac. Rep. 128; *Reeves & Co.* v. *Martin,* 20 Okla. 558, 94 Pac. 1058; *Missouri Pac. Ry. Co.* v. *Heidenheimer,* 82 Tex. 195; 10 R. C. L., § 352, p. 1149. Webster (1890) defines duplicate, as a law term: "An original instrument repeated; a document which is the same as another in all essential particulars, and differing from a mere copy in having all the validity of an original." The Century Dictionary and New Standard Dictionary similarly define this word.

Our research has failed to find an authority which defines "duplicate," or construes its use in a statute, as varying from that given by these authorities. It has sufficiently appeared that a copy can never be a duplicate copy. Nor can a "true copy" or a "certified copy" be a duplicate copy.

The Act relating to the deportation of Chinese laborers authorized the procurement of a duplicate certificate

of residence. The court held that "duplicate" was not synonymous with "true copy." *Dillard* v. *United States,* 72 C. C. A. 451, 456, 141 Fed. Rep. 303, 308. The statute of Indiana required a duplicate of a certificate of incorporation to be filed; the court held that the statute was not complied with by filing a certified copy; that the term certified copy is not synonymous with duplicate. A "duplicate," it held, "must be executed by the same parties . . . with the same formalities . . . as an original." *Nelson* v. *Blakey,* 54 Ind. 29, 36.

These authorities conclusively determine that when our statute says "duplicate copies of such notice," it means two copies, the original notice and a copy which repeated the original notice and had the validity of the original. They likewise determine that no mere copy and no true or certified copy can be a duplicate copy. All that the return means when it says "a true copy," is that it is a true copy of the original, but whether made by the hand that made the original or made by someone else and presumably the sheriff, we have no means of knowing. It is not the original repeated, and cannot be held to be a duplicate copy. The certificate of the sheriff that the copy was "attested," does not help to make the copy a duplicate copy. All that it signifies is that the sheriff bears witness or affirms that it is a true copy. To "attest" means "to bear witness to; . . . to affirm to be true or genuine." *McGuire* v. *Church,* 49 Conn. 248, 249.

The history of this statute and the practice under it from its beginning are a complete demonstration of the correctness of our construction of its term "duplicate copies." The statute was enacted in 1806, and is found on page 729 of the Public Acts of 1806. The part under consideration is in this form: "which notice shall be in writing, in the following form, viz.: I hereby

Lorch *v.* Page.

give you notice that you are to quit possession of the land, house (apartment, store, etc., as the case may be) now occupied by you, on or before the (here insert the day, place, date, and name). Of which notice duplicate copies shall be made, one of which shall be delivered to the lessee, or left at his place of residence, in the presence of at least one credible witness."

The statute remained in this form until, in the Revision of 1866, p. 82, it was provided that the notice should be "in substance in the form following," instead of as in its original form without the qualification "in substance." Shortly after the enactment of the 1806 statute, the practice became established that "duplicate copies" meant two copies, identical in form and each signed by the lessor, one of which should be served on the lessee and the other retained by the lessor and used in his proof that he had given the statutory notice to quit. In the Civil Officer of that day, edited by Niles (1833), we find a form of complaint in summary process, p. 127, one of the allegations of which is "that afterward, viz. on the          day of          , the complainant drew a written notice in the words and figures following, viz.: I hereby give you notice that you are to quit possession of the house (land or apartment as the case may be) now occupied by you, on or before the          day of          A. D.          Dated at H          the          day of          A. B. "And the complainant saith that he made duplicate copies of said notice, one of which he left on the day of the date thereof, at the said residence of the said C. D. (or delivered to him) in the presence of one credible witness; and the other he hath in possession, ready to be produced in court." The statute required the insertion in the notice of the name of the lessor. But in practice the name of the lessor was inserted at the end of the notice. This was its natural place and,

placed there, it complied with the statute. It will be noticed that this was the practice when the statute required literal compliance with the form of notice given, and the signature of the lessor to the notice made it clear that the notice must be that of the lessor and could not be a copy made by another. "Duplicate copies" as construed by this ancient practice meant an original instrument twice made, each having the authenticity of an original.

The revisers, in the Revision of 1875, p. 491, made two changes in this part of the statute. They omitted from the body of the statute the insertion of the name, and placed it at the end of the notice. The statute, with the practice thereunder for sixty-nine years, was perfectly clear. What the revisers did was to make it in its terms conform to this practical construction by placing the name at the end of the notice as had been the continuing practice. It was not the purpose of the revisers to change the meaning of "duplicate copies," that had been fixed long since. The other change in providing for service of the notice by the officer or indifferent person, we have referred to. It does not affect the question we are considering.

In 1881 Professor Townsend edited the 15th Edition of the Civil Officer. He was an associate in the practice of the law of Ex-Chief Justice Simeon E. Baldwin, one of the active members of the committee which made the Revision of 1875. His opportunities of knowing the intention of the revisers was unequalled. On page 195, he gives the form of complaint in summary process, generally following the form found in earlier editions of the Civil Officer, except as to the giving of the notice, the allegation for this being, paragraph 3: "On          , 188 , he gave due notice to the lessee , in the manner prescribed by the statute, to quit possession of the premises on or before          , 188 ." This change

was undoubtedly made to make the form conform to the requirement of the Practice Act and the Rules thereunder, and preceding the form he states: "Duplicate copies of this notice must be made, both of them to be signed by the party personally or by his attorney, and one served upon the tenant, by a proper officer or indifferent person. A certificate of service should be endorsed upon the other by the party making the service, with an affidavit of the truth of the return, when made by an indifferent person." This statement reiterated the established practice. It did nothing more. Three revisions of the statutes have been made since 1875. This statute has remained unchanged.

The practice as stated by Professor Townsend has also remained the approved practice and been reiterated in two later editions of the Civil Officer. The published blanks have required the signature of the lessor to the notice to quit, and the opinion of the profession has never before questioned that "duplicate copies" did not have the meaning which established practice had recognized. This practical construction placed upon "duplicate copies" for over one hundred years, is high, almost conclusive, evidence that their meaning conforms and should conform to that adopted by the practice. It shows a "practical construction" put upon the law, which is to be regarded as "high evidence of what the law is." *State ex rel. Mathewson* v. *Dow,* 78 Conn. 53, 56, 60 Atl. 1063; *Huntington* v. *Birch,* 12 Conn. 142, 149.

In a matter of such daily practical use as is the remedy provided by this statute, we think it of urgent importance that the long-established practice should remain unbroken, and especially so in a case where the ordinary legal construction placed upon the language under consideration conforms to the adopted practice.

The officer's return attests that the copy he served

was a true copy; it does not purport to attest that it was a copy signed by the lessor or owner, and hence it does not purport to attest that it was a duplicate copy. The officer could not serve a true copy, nor could he make a copy from the original, as the agent of the lessor, and serve that. Duplicate copies may be made by the lessor or his legal representative, but the officer or indifferent person cannot be the proper legal · representative for the making of these notices.

There is no error.

, In this opinion the other judges concurred.