WILLIAM E. ZYKLA v. GORDON FREYER

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 1249

Argued September 20, 1982—decided February 11, 1983

*Donald R. Beebe,* for the appellant (defendant).

*James J. Murphy, Jr.,* for the appellee (plaintiff).

COVELLO, J. The plaintiff brought this action claiming a 6 percent real estate commission pursuant to the terms of an exclusive agency listing agreement signed by the defendant. The parties agreed that the premises described in the listing had been sold during the term of the exclusive agency. The defendant claimed, however, that the listing agreement did not contain the terms required by General Statutes § 20-325a (b), and that the statute therefore precluded the institution of this action.[1]

The court found that the plaintiff was a licensed real estate broker and that the defendant was the owner of the premises known as 155–157 Boswell Avenue, Norwich, Connecticut. On April 4, 1980, the parties signed a written, exclusive sales agreement wherein the defendant appointed the plaintiff for six months as his exclusive agent to sell the Boswell Avenue property for $29,500. The plaintiff thereafter advertised the property and showed the premises to prospective buyers. On July 23, 1980, the defendant sold the property himself for $28,900.

---

[1] General Statutes § 20-325a (b) provides: "No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto."

At trial each party introduced his copy of the exclusive sales agreement. The agreement, on a form supplied by the multiple listing service, originally contained three bound, identical sheets of "carbonless" paper, a white original, a yellow copy and a pink copy. The paper was chemically treated so that pressure on the white original produced an impression on the yellow and pink copies.

The court found that the exclusive sales agreement, a white original produced by the plaintiff, when signed by the defendant contained the following:
   (a) the date of the agreement — April 4, 1980;
   (b) the term of the agreement — six months;
   (c) the sales price — $29,500;
   (d) the agreed commission — 6 percent;
   (e) the signature of the plaintiff;
   (f) the name and the address of the plaintiff;
   (g) the name and the address of the defendant.
The court concluded that the agreement thus complied with the provisions of General Statutes § 20-325a (b).

The defendant produced the yellow, second copy of the agreement. His copy, while nearly identical, was undated, did not include the selling price and did not state the term of the agreement. It bore no indication that it had been altered. The representative from the printing company that manufactured the form in question testified that alterations to the defendant's copy could not be made without leaving some mark upon it. Because of the missing information, the yellow copy did not comply with the provisions of § 20-325a (b).

The court ultimately concluded that nothing was added to the contract after the defendant received his copy and that the defendant's copy had not been altered.

The defendant argues that the court's conclusion fails to address the obvious discrepancies on the face of the conflicting documentary evidence. Since the second

copy could not be altered without leaving a mark, and since the original agreement contained more information than the otherwise identical second copy, the defendant argues that the only inference permissible is that the plaintiff must have added material information after the agreement was signed by the defendant and a copy given to him.

The plaintiff, however, offered an explanation as to how the white original could contain more information than the yellow copy, even at the moment it was signed. He testified that he placed a piece of hard cardboard between the first and second copies so that he could make personal notes as to things such as volume, page, map and lot number on the original without that information going through to the second and third copies. He testified that none of the blanks appearing on the yellow copy was in fact blank on the original at the time the parties signed the agreement and that the white original offered in evidence was just as it appeared at the time the parties executed it.

While reasoning minds may differ as to what the factual circumstances were here, a reviewing authority does not have the opportunity to observe the witnesses, their demeanor, comportment and the manner in which they testify. This is why such great deference is accorded the trier of fact on issues of credibility and the weight to be given conflicting testimony. Here, the court concluded that the exclusive agency listing agreement complied with the provisions of § 20-325a (b) at the time of its execution. Such a conclusion, while differing with the defendant's version, is legal, logical, does not defy reason and is consistent with the evidence offered by the plaintiff and the subordinate facts found by the court. "A conclusion of the trial court must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason." (Citation omitted.) *Kearney* v. *State,* 174 Conn. 244, 252, 386 A.2d 223 (1978).

The defendant further claims that the trial court erred in allowing the plaintiff's introduction of evidence on damages after he had rested his case. This claim is not included in the preliminary statement of issues as required by our rules of practice. See Practice Book § 3012 (a). The claim is therefore not properly before us and will not be considered. *Presutti* v. *Presutti,* 181 Conn. 622, 626, 436 A.2d 299 (1980).

There is no error.

In this opinion DALY, J., concurred.

BIELUCH, J. (dissenting). I disagree with the majority's determination that the trial court's conclusion was consistent with its findings and the evidence submitted by the plaintiff.

The sole issue before the court is whether the exclusive listing agreement complied with the requirements of General Statutes § 20-325a (b). The provisions of this section must be strictly construed. *Seaman* v. *King Arthur Court, Inc.,* 35 Conn. Sup. 220, 223, 404 A.2d 908 (1979). Under this statute, no licensed real estate broker "shall commence or bring any action" for a sale commission unless the listing contract meets certain specified requirements. The agency contract or authorization must "(1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto." General Statutes § 20-325a (b).

The defendant's duplicate copy of the listing agreement did not comply with the third and fourth requirements. It was undated, did not include the selling price and failed to give the duration of the listing. That those are essential elements of a listing agreement cannot be questioned. The use of the word "shall" connotes that the performance of the statutory re-

quirements is mandatory and the absence of any of those elements is fatal to the plaintiff's action. *Hossan v. Hudiakoff,* 178 Conn. 381, 383, 423 A.2d 108 (1979). The trial court specifically found that "[t]he defendant's copy of the exclusive sales agreement or contract has not been altered." That finding is irreconcilable with the court's further finding upon which it based its judgment for the plaintiff, namely, that "[n]othing was added to the contract, the exclusive sales agreement, after the defendant received his copy of the same." The court made no finding explaining the discrepancies between the two copies of the listing agreement in evidence.

The plaintiff's testimony regarding the documentary evidence included the following statements: He testified that he wrote the information missing from the defendant's form on his copy when the defendant met with him at his office. The plaintiff also testified that the defendant, in his own handwriting, filled in some additional blanks on the agreement form at that meeting. That latter information, unlike the entries allegedly made by the plaintiff, appears on the plaintiff's and on the defendant's copies. If, as claimed, the plaintiff had placed a piece of cardboard between the interleaved copies, it would be logical to conclude that none of the information added to the agreement at that meeting by the defendant would appear on the defendant's copy, and yet the defendant's additional items appear on both forms.

It is undisputed that the defendant's copy of the listing agreement lacked several requirements of § 20-325a (b). The listing agreement was a three part "carbonless" copyset of chemically treated paper simultaneously executed by any impression on the original or first copy, that being the copy retained by the plaintiff. The defendant's copy was the first duplicate in the set and, under the requirements of the statute, should have been as complete as the original

retained by the plaintiff which he produced in court in support of his claim. An execution in duplicate means that there must be two originals of the same tenor. " '[A] duplicate is the double of anything. . . . It is either one of the two originals, both of which are executed by the same party or parties, and may be offered in evidence.' *McCuaig* v. *City Savings Bank,* 111 Mich. 356, 358, 69 N.W. 500 [1896]." *Lorch* v. *Page,* 97 Conn. 66, 71, 115 A. 681 (1921).

The plaintiff's implausible explanation of the impression of the three additional statutory requirements on his copy of the listing agreement was not accepted by the special findings of the court. The incomplete provisions appearing in the defendant's copy of the contract are the only terms that the court could have found to have been contained in the listing agreement between the parties.

For these reasons, I would find error and remand with direction to render judgment for the defendant.