## Boston Insurance Company *v.* Rogers.

No. 42714          June 10, 1963          154 So. 2d 139

*Huff & Huff,* Forest; *Jerome B. Steen, Cary E. Bufkin, Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*O. B. Triplett,* Forest, for appellee.

KYLE, J.

This case is before us on appeal by Boston Insurance Company, defendant in the court below, from a judgment of the Circuit Court of Scott County rendered in favor of Mrs. Jimmy D. Rogers, plaintiff, in an action for property damage to the plaintiff's automobile as the result of a collision.

The plaintiff filed her declaration in the Circuit Court on August 22, 1962, in which she alleged that on June 14, 1961, for a premium of $265.32, the defendant Boston Insurance Company executed to the plaintiff a policy of insurance, which was attached as an exhibit to the declaration; that on or about August 6, 1962, while the policy was in full force and effect, the plaintiff sustained a collision loss to her automobile in the sum of $500; that following the collision the plaintiff gave notice of

the collision loss to the defendant, but the defendant denied liability to the plaintiff and contended that it had previously mailed to the plaintiff notice of cancellation of the policy. The plaintiff, in her declaration, denied that such notice of cancellation was ever mailed by the defendant; and the plaintiff alleged that she did not receive any such notice, and that she had never received any return of any portion of the premium paid by her for the policy. The plaintiff further alleged that the attempt on the part of the defendant to escape its liability under the policy constituted a willful and deliberate breach of the policy of insurance; and the plaintiff demanded both actual and punitive damages.

The cancellation paragraph of the policy attached to the plaintiff's declaration, which appears under the heading "Conditions of the Policy" is as follows:

"15. CANCELLATION. This policy may be cancelled by the insured named in Item 1 of the declarations by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the Company shall be equivalent to mailing * * *."

The defendant in its answer denied that it had agreed to pay the plaintiff for any loss occurring during the policy period, but averred that it had agreed to insure the plaintiff for the policy period alleged, subject to

all the terms of the policy and provided that the policy was not canceled in accordance with the terms pertaining thereto. The defendant admitted that it had denied liability to the plaintiff for the alleged loss resulting from the collision occurring on August 6, 1962; and by way of affirmative defense, the defendant alleged that on August 6, 1962, the date on which the plaintiff allegedly sustained a collision loss to her automobile, the policy of insurance in question had been fully and finally canceled. The defendant further alleged that on June 13, 1962, the defendant notified the plaintiff that the policy in question was canceled; that the effective date of the cancellation was June 25, 1962, at 12:01 A.M. Standard Time; and that the cancellation had been effected by mailing to the insured, at the post office address shown in the policy a notice of the cancellation of the policy, as provided for in the policy. A copy of the Notice of Cancellation was attached as an exhibit to the defendant's answer. The defendant further alleged that it had meticulously followed the terms of the cancellation provisions of the policy in the preparation and mailing of the notice, and that it had no responsibility or obligation to the plaintiff under the policy as a result of the collision loss occurring on August 6, 1962.

The case was tried before a jury on October 9, 1962.

The plaintiff testified that the policy of insurance was issued to her by the appellant on June 14, 1961, covering collision loss on a 1961 Buick automobile. The policy was introduced in evidence as an exhibit to the plaintiff's testimony. The plaintiff further testified that she sustained a collision loss to the automobile on August 6, 1962, and that prior to that time she had not received any notice of cancellation of the policy from the defendant.

On cross-examination the plaintiff testified that she had sustained a collision loss in November 1961 and another collision loss in February 1962, and a third

loss in August 1962, which was the loss in controversy.

Freddy B. Rogers, a member of Rogers-Davis Motor Company, a partnership, and a brother-in-law of the plaintiff, then testified as to the repair bill and damages. On cross-examination by the defendant's attorney, Rogers identified a check for the sum of $183.49, drawn by Fred L. Nelson Insurance Agency on the Deposit Guaranty Bank and Trust Company, Jackson, Mississippi, and payable to Mississippi Motors Finance Company and Mrs. Jimmy D. Rogers for the returned premium on the canceled policy in question. Rogers also identified the signature of the plaintiff as one of the endorsers of the check.

At the conclusion of Rogers' testimony the plaintiff rested. The defendant moved that the court exclude the evidence offered on behalf of the plaintiff and direct a verdict for the defendant. The motion was overruled.

Three witnesses were called to testify as witnesses for the defendant. Lester T. Carr testified that he was employed by Boston Insurance Company as a casualty underwriter, and that a part of his responsibility was to make decisions as to the acceptability of risks and as to whether or not certain risks should be canceled. Carr described in detail the procedure followed in his office with reference to the cancellation of insurance policies, and the mailing of notices of cancellations, including the procedure followed on June 13, 1962, in the cancellation of the policy owned by the plaintiff. Carr stated that the customary procedure in his office was, that when a decision was made to cancel a policy, his secretary under his direction prepared a notice of cancellation on one of the prescribed forms and brought it to his desk for his signature, and after obtaining his signature the secretary placed the notice in an envelope and carried it to the post office and mailed it and obtained a certificate from the postal clerk showing the mailing of the letter. His office retained a copy of the

certified mailing receipt for its records and a carbon copy of the notice. Carr stated that his secretary on June 13, 1962, was Miss Jan Power, and that the procedure outlined above was followed strictly in the case of the cancellation of Mrs. Rogers' policy. A copy of the notice of cancellation mailed to Mrs. Rogers at her address of Morton, Mississippi, on June 13, 1962, duly signed by Carr as authorized representative of the company, and having attached thereto a certificate of the mailing of same by Jan Powers, was introduced in evidence. There was also introduced in evidence a receipt from the post office department at Jackson, showing the mailing on June 13, 1962, of one piece of ordinary mail addressed to Mrs. Jimmy D. Rogers, Morton, Mississippi. Clark stated that after the signing of the cancellation notice his secretary computed the premium due the plaintiff for the unearned portion of the policy, and a credit memorandum showing the amount thereof was sent to the Fred L. Nelson Insurance Agency, the agency which had written the policy issued to the plaintiff; and the agency was given credit for the amount of the unearned premium.

Miss Jan Power testified that she was an employee of the Boston Insurance Company on June 13, 1962, and that she worked for Mr. Lester Carr. Her duties included writing insurance policies, writing endorsements, and preparing notices of cancellation. She identified the notice of cancellation which had been introduced in evidence as a copy of the notice of cancellation which had been sent to Mrs. Rogers in Morton. She stated that after Mr. Carr had signed the notice of cancellation, she took the original and put it in an envelope and mailed it and the postal clerk gave her a receipt certifying the mailing of the letter and the date on which it was mailed.

Mrs. Shirley Dyess testified that she worked for Fred L. Nelson Insurance Agency in the Standard Life Build-

ing, at Jackson, and that on June 13, 1962, Fred L. Nelson Insurance Agency received a cancellation notice from the Boston Insurance Company showing the cancellation of the policy issued to Mrs. Jimmy D. Rogers, with a credit memorandum for the return of the unearned premium. She stated that Mrs. Rogers was buying the car through the Mississippi Motor Finance Company, and a check for the amount of the unearned premium was issued by Fred L. Nelson Insurance Agency to Mississippi Motor Finance Company and Mrs. Jimmy D. Rogers on August 7, 1962, for the sum of $183.49. She stated that the reason the check was dated August 7, 1962, was that, when she received the notice of the cancellation of the policy, she gave the bookkeeper the office copy of the policy but failed to attach to it a note directing her to return the office copy to her desk so that a refund check might be issued; and the matter was not brought to her attention again until Mrs. Rogers notified her of the accident on August 6, 1962.

The plaintiff was recalled to testify as a witness in rebuttal of the testimony offered on behalf of the defendant; and in the absence of the jury the plaintiff testified that on June 14, 1962, she received a letter from the Boston Insurance Company in the form of a questionnaire, which indicated that the insurance company was going to change her liability insurance and put it on an assigned risk plan at a higher premium. She carried the letter to her home to show it to her husband, and she and her husband decided that they "would not go to all the trouble of filling it out and getting the doctor to sign it," and she threw the letter in the wastebasket. The court sustained the defendant's objection to the rebuttal testimony. The plaintiff recalled Freddy B. Roger as a witness; and in the absence of the jury, Rogers testified that about the middle of the month of June he had a conversation with Mrs. Jimmy Rogers about a form letter which she had re-

ceived, and which was written or printed on the stationery of the Boston Insurance Company; that the letter pertained to her liability insurance and had nothing to do with her collision policy, and he advised the plaintiff to forget about it. The testimony was objected to by the defendant's attorney, and the objection was sustained. The plaintiff then rested her case.

The record shows that the defendant again moved for a directed verdict, and the motion was overruled. The jury returned to the courtroom, and the court adjourned until 9 o'clock A. M. the following morning.

When the court reconvened at 9 A.M. the following morning, the plaintiff's attorney in the absence of the jury renewed his request that the plaintiff be permitted to take the stand and testify that on June 14, 1962, she received a letter from the Boston Insurance Company, but that letter did not contain a notice of cancellation of the insurance policy sued on. The court announced that it was going to alter its ruling and permit the plaintiff to testify that she received a letter from the Boston Insurance Company and the letter was not a notice of cancellation, but the plaintiff would not be permitted to reveal what the contents of the letter was, because she could not produce the original. The jury thereupon returned to the courtroom and over the objection of the defendant's attorney the plaintiff was permitted to testify that she had received a letter from the Boston Insurance Company during the month of June, 1962, after June 13, and that the letter did not contain a notice of cancellation of her collision policy, that it was "just a questionnaire which was not signed by anybody."

After the above mentioned testimony had been admitted the defendant's attorney made the following statement to the court:

"If the court please, I think in view of the testimony of this witness that we should be permitted to rebut

this testimony by bringing our two witnesses back and getting at the real issues of what the letters, if any, were, so that the court and jury may know what they were. Our witnesses are not here. They are in Jackson standing by, ready to come.'' The court's answer to the statement of the defendant's attorney was: ''I am going to overrule your request, Mr. Steen.''

The defendant's attorney then moved for a mistrial and assigned as grounds therefor (1) the action of the court in reversing its prior ruling so as to allow the plaintiff to testify in rebuttal concerning the receipt of the unsigned letter or questionnaire; and (2) the refusal by the court, in the presence of the jury, of the defendant's request for permission to rebut the plaintiff's testimony concerning the receipt of the unsigned letter or questionnaire. The defendant's attorney also stated in support of his motion that, on the preceding day, after the adjournment of court, by stipulation of counsel, all witnesses had been excused, and the defendant had been placed at a great disadvantage in enlightening the court and the jury as to all the facts in the matter; and in view of the court's ruling, the defendant could not offer testimony to show that no correspondence other than the notice of the cancellation had been mailed to the plaintiff by the defendant during the month of June 1962.

The court overruled the defendant's motion for a mistrial. The defendant's attorney then moved that the court reopen the case so as to permit the defendant to offer evidence in reply to the plaintiff's rebuttal testimony. That motion was overruled.

At the conclusion of the evidence the jury returned a verdict in favor of the plaintiff in the sum of $400, and judgment was entered against the defendant for that amount.

██ █ The defendant has assigned and argued four points as ground for reversal of the judgment. The fourth point assigned and argued is, that the court erred in refusing to allow the appellant to introduce testimony in surrebuttal to rebut the testimony of Mrs. Rogers concerning the receipt of the unsigned letter or questionnaire. In view of the conclusion that we have reached on this point, it is not necessary that we consider at this time the remaining assignments of error.

We think the court committed reversible error in its refusal to grant the request of the defendant that it be given an opportunity to reply by surrebuttal to the rebuttal testimony concerning the receipt of the unsigned letter or questionnaire.

██ █ The trial courts are vested with wide discretion in the admission of rebuttal evidence and their actions will not be held erroneous to the extent of requiring a reversal unless the discretion was exercised to the prejudice of the opposite party. St. Louis-San Francisco R. Co. v. Dyson, 207 Miss. 639, 43 So. 2d 95. But this Court has held that "when the question is not free from doubt whether the evidence offered in rebuttal is that which belongs to the evidence in chief, or whether it is rebuttal evidence proper, the court should resolve the doubt in favor of the reception in rebuttal where (1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surrebuttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal." Roney v. State, 167 Miss. 827, 150 So. 774, 776.

After the court in this case reversed its ruling of the preceding day and admitted the plaintiff's rebuttal testimony concerning the receipt of the unsigned letter

or questionnaire, the court, in view of the facts stated by the defendant's attorney, should have granted the defendant's request for additional time within which to recall its witnesses and make them available for further examination in surrebuttal of the plaintiff's rebuttal testimony. The action of the court in refusing to grant such request was, in our opinion, both erroneous and prejudicial to the defendant.

For the reasons stated above the judgment of the lower court will be reversed and a new trial granted. We have purposely refrained from making any comment upon the merits of the case or the weight to be attached to any part of the testimony.

Reversed and remanded.

*Lee, P. J., and Arrington, Ethridge and Gillespie, JJ.,* concur.