EMPLOYERS MUTUAL CASUALTY COMPANY *v.* NOSSER

No. 43044          May 25, 1964          164 So. 2d 426

544

*Davidson & Beach, Satterfield, Shell, Williams & Buford,* Jackson; *William F. Riley,* Natchez, for appellant.

*Joseph E. Brown, Jr., Fred C. Berger,* Natchez, for appellee.

*O. B. Triplett, Jr.,* Forest, Amicus Curiae.

BRADY, TOM P., J.

This is an appeal by the Employers Mutual Casualty Company, appellant, from an adverse decree rendered by the Chancery Court of Adams County, Mississippi, on the 20th day of August, 1962, which awarded to the appellee, Joseph J. Nosser, the sum of $2,394.62, with legal interest at the rate of six per cent per annum from the date of the decree, together with all costs. The record discloses the following pertinent facts. The appellant, Employers Mutual Casualty Company, is an Iowa insurance corporation, qualified to do business in the State of Mississippi, through a general agency, the Southern Underwriters, Inc., and through local agencies appointed by the Southern Underwriters, Inc. A policy of insurance, number 9797929, was issued through the Guido-Foley Agency in Natchez, Mississippi, to the appellee. The policy was issued on November 14, 1961, covering a period extending to November 14, 1962. The Guido-Foley Agency was the predecessor of the Butts-Doughty Insurance Agency, which is involved in the case at bar. No question is made as to the authority of either of these agencies to issue the policy or the subsequent endorsement thereon, which was actually made by the Butts-Doughty Insurance Agency on the 28th day of February, 1962. This endorsement added comprehensive and collision coverages not included in the original policy. The original policy was issued to cover collision loss and personal injury received only by the appellee in the operation of his automobile and it had the customary fifty dollar deductible provision clause therein.

One Miss Elizabeth Calloway, an employee of the Southern Underwriters, Inc. of Jackson, Mississippi, who resided in Jackson, Mississippi, testified that (1) on March 15, 1962, she mailed to the appellee a notice of cancellation advising appellee that the aforesaid policy of appellant was canceled effective as of 12:01 A. M. on March 25, 1962. The Southern Underwriters, Inc. is a well known automobile underwriter, and Miss Calloway has been in their employment for some thirteen years, and the record reflects it was her duty to check the dailies that came in, to issue policies, to issue notices of cancellation, to check cancellations and endorsements. She testified that she sent this notice of cancellation in response to a request from the home office to cancel policy 9797929 issued on November 14, 1961 by the appellant to appellee Joseph Nosser of 13 Brentwood Lane, Natchez, Mississippi. The endorsement to the policy, which added comprehensive and collision coverage, also added a loss payee, which was the Service Motor Company, Natchez, Mississippi. On April 4, 1962, the appellee, while operating the insured automobile, became involved in an accident in Natchez, Mississippi. The appellee immediately contacted the Butts-Doughty Insurance Agency to report the accident, and was notified that his policy had been canceled prior to April 4, 1962. Appellee employed an attorney who, on or about April 5, 1962, addressed a letter to the appellant at its home office in Des Moines, Iowa, and to the Butts-Doughty Insurance Agency in Natchez, Mississippi, advising both addresses of the accident in which the appellee had been involved on April 4th, and called upon the appellant and its aforesaid agent to pay any claims which might arise from said accident. On April 13th appellant's branch claim superintendent, J. B. Garretty, advised Mr. Burger that the appellant's policy number 9797929 had been canceled prior to April 4, 1962, and thereafter declined to afford to Mr. Joseph Nosser any

coverage whatsoever for the accident which occurred on said date because the policy was no longer in effect on that date.

The appellee was subsequently sued in the County Court of Adams County, Mississippi by J. O. Bearden, who obtained a judgment against the appellee in the sum of $748.48, plus costs. The attorney who represented the appellee claims a fee of five hundred dollars. The appellee testified that the actual cost of repairs to his automobile, being the one insured under the appellant's aforesaid policy, was the sum of $846.14, but he also testified that the cost of repairs, including depreciation, was approximately $1,146.14. The appellee thereafter filed his suit against the appellant in the Chancery Court of Adams County, Mississippi, and in his bill of complaint appellee prayed for a judgment against appellant in the total sum of $2,394.62. Appellant answered the aforesaid suit in the chancery court, asserting as his chief defense that said policy had been canceled effective March 25, 1962, which date was prior to the date of the alleged accident relied upon by the complainant. The appellee contended further that it owed the complainant nothing.

At the conclusion of the trial the learned chancellor dictated into the record an opinion and finding of fact which in substance held that no written notice of the cancellation had been mailed to the appellee by the appellant, the same was never deposited in the United States Post Office in Jackson, Mississippi with postage fully prepaid, and the same was never received by the complainant herein. The court went further and found superfluously that local agent Butts-Doughty Insurance Agency of Natchez, Mississippi never advised the appellee that his policy was canceled; that there was an amendment or rider to said policy issued shortly before the alleged cancellation; that the appellee was entitled to a refund of some $87 even if the appellant had can-

celed said policy of insurance as is claimed. The chancellor categorically held as a fact the appellant did not mail notice of cancellation and it never made a refund to appellee and that it is estopped from asserting its special plea in bar which set up the cancellation of the policy. A judgment was entered therein, awarding unto the appellee the full amount sued for in its bill of complaint of $2,394.62, with interest at six per cent per annum from August 20, 1962, and all costs incurred therein.

The appellant urges in its assignment of errors two, namely, (1) the lower court committed manifest and reversible error in finding and adjudicating that the insurance policy in question had not been canceled, and (2) the lower court erred in awarding the sum of $1,-146.14 to the appellant for physical damage (including depreciation) to his own automobile.

The primary question here is whether or not the appellant accomplished the cancellation of the appellee's policy on March 25, 1962, at 12:01 A. M. in accordance with the terms and provisions of the policy of insurance. We must carefully consider that portion of the policy which relates to the cancellation, which is paragraph 16 and which section is as follows:

"16.  *Cancellation*  This policy may be canceled by the insured named in Item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. *This policy may be cancelled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.* The time of surrender or the effective date and hour of cancellation stated in the notice *shall become the end of the policy*

*period* . . . . Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, *but payment or tender of unearned premium is not a condition of cancellation."* (Emphasis supplied).

It is obvious that the above "standard form" of policy cancellation conditions and wording expressly permit (1) the appellant to cancel the appellee's policy by mailing notice to the appellee stating when not less than ten days thereafter such cancellation shall be effective; (2) that the mailing of notice shall be sufficient proof of notice; (3) that non-receipt of the notice by the appellee is not involved and did not affect the validity of the cancellation; and (4) that the failure of appellant to return the unearned premium was not a condition of cancellation.

Miss Calloway, the appellant's Mississippi general agency underwriter, unequivocally testified that she mailed the notice of cancellation as required in Section 16 of the policy; that this was done on March 15th; that the appellee was notified that on March 25th, at 12:01, the policy would be canceled. Copy of the notice of cancellation which she prepared was introduced in evidence. The original was sent to the appellee. A post office receipt number 3817 was likewise introduced, which Miss Calloway testified she obtained from the postmaster in Jackson, Mississippi, as proof of the fact that the letter to the appellee had been mailed. She testified that the postmaster stamped the envelope and tore the certificate off and handed it back to her, and "threw", or placed, "the letter into his mailing box." Miss Calloway's testimony was corroborated by these exhibits which were introduced thereto. The record fails to disclose any positive testimony contradicting or denying that the cancellation of this policy was mailed as aforesaid. The appellee himself did not testify that the

notice of cancellation was not mailed; he merely testified that he did not receive the notice.

The findings of the chancellor are of the utmost importance and therefore we quote from the pertinent parts thereof:

The court found as a fact that no written notice of cancellation was mailed to the appellee, Joseph J. Nosser, on March 15, 1962; it found as a fact that same was never deposited in the United States Post Office at Jackson, Mississippi, with postage fully prepaid; and further found that the same was never received by the appellee herein; that the local agent, Butts-Doughty Insurance Agency, Natchez, Mississippi, never advised the appellee that his policy was canceled; that the appellee was entitled to a refund of some $87 even if the appellant had canceled said insurance policy as it claims but which the court found as a fact that it did not mail the notice of cancellation; that the appellant has never made a refund to appellee, though appellee was entitled to approximately $87 refund of his $110.21 premium paid; that by continuing and wilfully refusing to refund the premium due to appellant, appellee insurance company is estopped from presenting its special plea in bar (cancellation of the insurance policy); and the court further found as a fact that said cancellation of notice was in fact never mailed. The decree then granted the appellee a judgment against appellant in the sum of $2,394.62, with legal interest at the rate of six per cent per annum from date.

It is apparent that we are called upon to construe the cancellation clause of the policy in question. At the outset, it can be stated with certainty that the cancellation clause is "standard", it is not ambiguous and is expressed in plain and certain language, which anyone of ordinary intelligence can understand. We have repeatedly held that if an insurance contract is in plain and unambiguous language it should be construed

as written, just like any other contract. Griffin v. Maryland Casualty Co., 213 Miss. 624, 57 So. 2d 486; Mississippi Mut. Ins. Co. v. Ingram & Laud, 34 Miss.. 215; Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335. In Farmers Mutual Insurance Assn. v. Martin, 226 Miss. 515, 84 So. 2d 688, we pointed out again that the rule as set forth in Griffin v. Maryland Casualty Co., supra, was important, which is to the effect that a plain, unambiguous insurance contract should be construed as written and just like any other contract. This rule has been restated repeatedly in substantially the same language. National Bankers Life Insurance Co. v. Cabler, 229 Miss. 118, 90 So. 2d 201.

██ █ Therefore, it is apparent that the appellant here was authorized by the insurance contract to cancel the same "by mailing to the insured" (the appellee) "named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective." It is obvious that "the mailing of notice as aforesaid shall be sufficient proof of notice". This is stated verbatim as found in paragraph numbered 16 pertaining to cancellation. Insofar as. the question of ambiguity is concerned, the cancellation clause has been substantially held to be unambiguous. Jensen v. Traders & General Ins. Co., 52 Calif. 2d 786, 345 P. 2d 1; Aetna Casualty and Surety Co. v. Simpson (1961), Fla., 128 So. 2d 420; and Service Fire Ins. Co. of N. Y. v. Markey, Fla., 83 So. 2d 855; and the other authorities cited therein.

It is apparent therefore that the cancellation of the appellee's insurance policy could, by the clear and unambiguous provisions of the cancellation clause, be canceled by the appellant by mailing to the insured notice stating when such cancellation would be effective in accordance with the provisions of the cancellation clause shown above. The decree of the chancellor in the court

below found that the cancellation notice was never received by the appellee here and apparently the chancellor felt that since receipt of the notice of cancellation was denied by appellee that this was important and had bearing upon the question of whether or not the notice of cancellation was mailed to the appellee by depositing it in the United States mail in Jackson, Mississippi. If this be true, then the lower court required of the appellant more than is called for in the cancellation notice. There was no burden upon the appellant to obtain a return registered receipt of acceptance, which is a departure from the conditions of the cancellation section; all that was required of the appellant was to mail the notice, as aforesaid, and "the mailing of notice as aforesaid shall be sufficient proof of notice."

██ █ This case is a first impression in this jurisdiction and no decision has been found which can properly be considered as controlling. We must therefore resort to the relevant decisions of the courts of our sister states in order to reach a proper decision in the case at bar. At the outset, appellee's brief admits that the majority of the courts hold that "cancellation may be effected by mailing of a notice of cancellation in the manner stipulated in the policy"; and, in addition, appellee states that it realizes and concedes that "barring insurance to the contrary, an insurance company may validly contract for the cancellation of one of its policies by placing the notice of cancellation in the mail" properly addressed to the insured. This frank statement by the appellee has ample authorities to prove it to be correct. However, appellee then asserts that it was a question of fact as to whether the notice was mailed, and urges several integral parts of the evidence to support a finding of fact that the cancellation was not mailed, the predominant one being (a) failure of appellee Nosser to receive a notice; the first time he learned of it was when he reported his accident. Other

bits of evidence urged in support of this contention are as follows: (b) alleged inability of Miss Calloway to remember the names of people to whom she had sent notices of policy cancellations; (c) failure of appellee to receive a refund for the unearned premium; (d) appellee's increased coverage through appellant on February 28, 1962, and notice of cancellation was allegedly mailed on March 15, 1962; (e) the endorsement provided for the addition of a loss payee clause, the loss payee not being notified of the cancellation.

It is only appellee Nosser's claim (a) that he did not receive the notice, which merits any consideration in determining whether the notice of cancellation was mailed, and the policy was thereby terminated.

There is simply no evidence in the record to support the finding that notice was not mailed to Nosser. The testimony of Miss Calloway is undisputed, and there is also the documentary evidence of the Post Office Department's "Certificate of Mailing", and the notice of cancellation properly sworn to before the Chancery Clerk of Adams County, residence of the appellee, addressed to Nosser at his correct address in Natchez. There is absolutely no basis for the trial court's finding that notice of cancellation was not mailed to Nosser.

The appellee contends, however, that since Nosser claims he did not receive the notice it can be inferred, or that since Nosser says he did not receive the notice there is a presumption, contrary to the majority rule, that the cancellation notice was not mailed and a question of fact is thus presented.

The appellee cites no case authorities to support his contentions, and there are no Mississippi cases, but nevertheless this important question merits a careful consideration of any pertinent authorities of any jurisdiction which are illuminating and merit affirmation.

Before undertaking this somewhat complex analysis, we find that appellee's claim (b) that Miss Calloway's

inability to recall the names of other persons whose policies were canceled in no way negatives or impugns her certain assurances that she definitely recalls writing and mailing the cancellation to the appellee, for the reason that his cancellation had been held up, pending the settlement of a claim in which he was involved, and for this reason his cancellation was distinguished and set apart from the others, and remembered by her. The failure of the appellee (c) to receive a refund of the unearned premium has not the slightest bearing upon whether the notice was mailed, and moreover the failure to refund or tender the unearned premium is not a condition of the effectiveness of the cancellation. Westmoreland v. General Accident Fire & Life Assur. Co., 144 Conn. 265, 129 A. 2d 623, 64 A. L. R. 2d 976; Boston Insurance Co. v. Rash (1955), 263 Alt. 201, 82 So. 2d 177, 181; Parks v. Lumbermens Mut. Casualty Co. (1945), 327 Ill. App. 356, 64 N. E. 2d 210; and Summers v. Travelers Insurance Co. (1940), 8 CCA, 109 F. 2d 845, 127 A. L. R. 1336. The increased coverage (d) sought by appellee is not even remotely connected with appellant's notice of cancellation in time or content, which is likewise true of (e) the addition of the loss payee clause of the endorsement, and the failure to notify the loss payee. Nowhere in the insurance contract is cancellation notice required to be given to the loss payee, or to be given by the local agent of appellant. These are but ingenuous, wishful aspirations on appellee's part.

Mississippi has not passed upon the application and validity of an insurance policy clause for notice of cancellation by mailing the same to the insured. In Boston Insurance Co. v. Rogers, 247 Miss. 173, 154 So. 2d 139, which was a suit on a policy with a cancellation clause somewhat similar to the one at bar, but not entirely so, the question may be found, but was not considered in deciding the case. The case was reversed solely on

the ground of the trial court's refusal to grant defendant's request to introduce testimony in surrebuttal rebut testimony of plaintiff concerning receipt of an unsigned receipt or questionnaire. Therefore, the opinion in that case stated, "* * * it is not necessary that we consider at this time the remaining assignments of error." The opinion further stated that "We have purposely refrained from making any comment * *·*" upon the issues. It is apparent therefore that the case was reversed solely on the refusal to permit the defendant to offer surrebuttal evidence.

■■■ Addressing ourselves to the question of whether or not the trial court committed manifest and reversible error in finding and adjudicating that the insurance policy in question had not been canceled, at the outset it should be pointed out that "a provision in an insurance policy which makes the mailing of notice sufficient to cancel the policy, even though such notice is not actually received by the insured, is not invalid as contrary to public policy." See Gendron v. Calvert Fire Insurance Co., 47 N. M. 348, 143 P. 2d 462, 149 A. L. R. 1310; Trinity Universal Insurance Co. v. Willrich, 13 Wash. 2d 263, 124 P. 2d 950, 142 A. L. R. 1. This rule seems to be generally recognized, and it follows therefore that it is only where there is a controlling statute or where the legislature of a state by declaration has announced the mere mailing of notice sufficient to cancel a policy is contrary to public policy that the same can be held to be so. In 29 Am. Jur., Insurance, Sec. 386, p. 737, can be found a discussion of "Notice by Mail as Dependent Upon Receipt Thereof." Insofar as the case at bar is concerned, the part applicable is as follows:

"Where the policy states that the insurer may cancel the policy by mailing the notice of cancellation to the insured's address as stated in the policy, the actual receipt by the insured of the notice is not a condition

precedent to a cancellation of the policy by the insurer, and the mere mailing of the letter containing a notice of cancellation is sufficient to effect a cancellation. This rule is obviously based upon the fact that the term 'mailing' as used in the policy provision is unambiguous and refutes the contention that the notice must be received.'' Dent v. Monarch Life Ins. Co., 231 Mo. App. 283, 98 S. W. 2d 123; Wolonter v. U. S. Casualty Co., 126 Va. 156, 101 S. E. 58; Anno., 64 A. L. R. 2d 995.

The cancellation clause in the case at bar is a standard cancellation provision. In 29 Am. Jur., Insurance, Sec. 386, p. 738, may be found a discussion of the fourth type of cancellation provision, which is as follows:

''The fourth type of cancellation provision is represented by what may be called the standard cancellation provision. It provides that the policy may be canceled by the insurance company by mailing to the insured at his address written notice stating that in not less than 5 days thereafter such cancellation shall be effective. The specific provision is added that the mailing of notice shall be sufficient proof of notice and that the effective date and hour of cancellation stated in the notice shall be the end of the policy. Such a provision is valid and is not contrary to public policy. A majority of the cases hold that under such provision the actual receipt of the cancellation notice by the insured is not a condition precedent to the cancellation of the insurance by the insurer in view of the fact that the express terms of the contract sanction the sufficiency of a notice deposited in the mail. In other words, these courts proceed upon the basis that the parties by their contract in effect constituted the government, in its business of operating the mails, the agent of the insured for the purpose of receiving the notice of cancellation. By mailing the cancellation notice the insurer has fully complied with the standard policy provision as to notice of cancellation, and the insurer is under no obliga-

tion to use reasonable diligence to get actual notice of cancellation to the insured.''

Both the quoted text in Am. Jur., and 45 C. J. S., Insurance, Sec. 450 (2), pp. 89-90, recognize that there is a minority view of some courts holding that receipt is necessary, but this holding, according to these texts, and those cases, arise where there is a statute affecting the contract provision or usually also where there has not been a strict compliance with the terms of the cancellation provision. This is not so in the case at bar, where there was a complete compliance with the cancellation provision. See also 8 Appleman, Insurance Law and Practice, Sec. 5015, p. 616.

There are many decisions from state courts and likewise from federal courts in which the interpretation of this question of sufficiency of notice of cancellation has been clearly presented. See Warner v. Farmers' Automobile Inter-Insurance Exch., 104 Colo. 359, 90 P. 2d 965; Seaboard Mut. Casualty Co. v. Profit, 4 CCA, 108 F. 2d 597, 126 A. L. R. 1105; Davis v. Travelers Indemnity Co. (1956), 94 Ga. App. 102, 93 S. E. 2d 810; Aetna Casualty & Surety Co. v. Simpson, supra; Queen Insurance Co. of America v. Nalley Discount Co., (1960), 215 Ga. 837, 114 S. E. 2d 21.

In all of the above cited cases the court held substantially that the cancellation condition, when properly given, precluded coverage, irrespective of whether or not the notice was received; that the mailing of notice was sufficient without receipt thereof; that the proof of the mailing of notice was sufficient to establish cancellation without proof of receipt of the notice. We hold therefore that there was no burden incumbent upon the appellant to obtain from the appellee a receipt showing that he had actually received or accepted the notice of cancellation. There is no merit in the assertion of appellee that because the approximate $87 refund of premium had not been made to the ap-

pellee that the appellant was estopped from asserting its special plea in bar or that this might be taken as indicative of the fact that notice of the cancellation was not mailed to the appellee. The concluding sentence of the notice of cancellation herein expressly provides, "but payment or tender of unearned premium is not a condition of cancellation."

It should be noted also that in all cases with the exception of one California and one Minnesota case where actual receipt of the notice of cancellation by the insured was held necessary, despite the policy provision that notice of cancellation mailed to the address of the assured as stated in the policy should be sufficient notice, *a statute required that the insured be given notice of the cancellation in a specified number of days.* Apparently such a statutory provision overrides a clause in the policy which would tend to nullify the intention of the legislature of giving the insured timely notice of an impending cancellation of his insurance policy, thus permitting him to attempt a substitute coverage if he so desires. Midwestern Ins. Co. v. Cathey, Okla., 262 P. 2d 434 (which will be later considered herein); Anno., 64 A. L. R. 2d, Sec. 17, p. 1012; Farmers Ins. Exchange v. Taylor, 10 CA Okla., 193 Fed. 2d 756 (dictum).

The minority rule has authorities, but some are not applicable to the case at bar for various reasons. It is noteworthy that subsequent to the 1953 decision in Midwestern Ins. Co. v. Cathey, supra, which was based upon the *statutory requirement,* the legislature of Oklahoma in 1957 repealed the statute, evidently for the purpose of permitting the Oklahoma courts to follow the majority rule, that mailing of the cancellation is sufficient notice without proof of actual delivery.

In the Texas Law Review (1960), Risjord, in the chapter on Construction of Terms of Liability Insurance With Specific Reference to the Cancellation Condition,

38 Tex. L. Rev. 198, 202-203, discusses succinctly the rules on cancellation and points out that the cancellation condition, which is present in the instant case, is of the standard basic automobile liability policy. Fortified with citations, he then summarizes the rule and the reasons for it:

"Where the proper notice is mailed by regular mail to the named insured at the address stated in the policy, the overwhelming authority supports the rule that the notice is effective to terminate the policy at the effective date stated in the notice, so that the policy does not apply to accidents occurring after such date even though within the policy period as originally specified in the policy and even though the notice was not received by the named insured.

". . . The majority rule's rationale includes the assumption (common to the law of contracts, for instance, that the acceptance of an offer transmitted by mail is accomplished by the mailing of the instrument of acceptance) that the efficiency of the Post Office Department of the United States is such that an envelope properly addressed, with the proper postage affixed, deposited in the U. S. mails will be properly delivered. 'Neither snow nor rain nor heat nor gloom of night stays these couriers from the swift completion of their appointed rounds.' The policy, then, only requires that the company perform the ordinary acts of the business community. The chances of delivery of such a document are so great as to permit social acceptance of the one chance in many thousand that in a particular case there may be no receipt."

Risjord summarizes that three, or possibly four jurisdictions, without statute, or a legislative declaration of public policy as to cancellation, state the small minority rule that the plain provisions of the policy should be ignored. The rule that evidence of non-receipt "is evidence of non-mailing largely destroys the value of

the policy provisions, since there would seem to be little practical difference between this rule and a rule that non-receipt of the notice defeats the cancellation.''

The annotation in 64 A. L. R. 2d 982 (1959) is entitled ''Actual Receipt of Cancellation Notice Mailed by Insurer as Prerequisite to Cancellation of Insurance.'' On page 995 it is stated that ''The unanimous rule is that the actual receipt by the insured of such notice is not a condition precedent to a cancellation of the policy by the insurer, and the mere mailing of the letter containing a notice of cancellation is sufficient to effect a cancellation.''

At page 1000, 64 A. L. R. 2d, the editor discusses the standard provision of cancellation similar to that in the instant case. The overwhelming majority of cases hold, the text states, that where mailing of notice is sufficient proof of notice, as stated in the policy, the mailing of a notice of cancellation is sufficient, and the actual receipt of such notice by insured need not be shown.

It appears therefore that the minority rule that evidence of non-receipt of the cancellation notice is evidence of non-mailing prevails in only three or four jurisdictions where it is *not required by statute or by legislative declaration* so that to hold otherwise is contrary to public policy as was held in Jensen v. Traders & General Ins. Co., 38 Texas Law Rev. 209, 141 Cal. App. 2d 162, 296 P. 2d 434 (1956). The Jensen case is easily distinguishable from the case at bar for the additional reason that the language of the cancellation clause was held to be ambiguous, and the jury was moreover instructed in violation of the legislative declared public policy of California.

In the case of White v. Dixie Fire Ins. Co., 36 S. E. 2d 923 (1946), a North Carolina case, the cancellation was communicated by way of a letter advising that the cancellation had been made which is also a distinguish-

ing feature. However, North Carolina, along with Minnesota, may be listed as following the minority rule in the absence of statutory requirement.

In Allied Am. Mut. Fire Ins. Co. v. Paige, 143 A. 2d 508, a case from the District of Columbia, the court there thought it was unnecessary to decide whether only mailing and not receipt of the notice was required to cancel the policy and advanced the novel proposition that the decision of that question "must await the case in which both mailing and non-receipt are conclusively established." This case affords little comfort to the appellee's position.

In the case of Keeling v. Travelers Ins. Co., 180 Okla. 99, 67 Pac. 2d 944, which comes under the statutory provisions of Oklahoma and which adopts the minority rule, it is not helpful to appellee because it is clearly distinguishable from the case at bar on the facts (as is true of Jensen v. Traders & General Ins. Co., supra, where the Post Office receipt was illegible.) In Keeling v. Travelers the clerk had no independent recollection of mailing the notice, and testified she did so, only as a part of the customary, routine work. The mailing, therefore, just as in Verecchia v. De Siato, 45 A. 2d 8, 353 Pa. 292, was not of a definite and specific character so as to establish the actual fact of mailing. In the case at bar a more definite and specific act of mailing could scarcely be shown.

It can be conceded that Georgia and Missouri have followed the minority line of reasoning, i. e., that evidence of non-receipt would create a jury question of nonmailing. Allstate Insurance Co. v. Buck, 96 Ga. App. 376, 100 S. E. 2d 142 (1957); Ireland v. Mfgs. & Merchants Indemnity Co., 298 S. W. 2d 529. This is an extension of the minority rule. In opposition to these few minority rule citations there are legions of cases from twenty-four states scattered over the entire nation. The listing of these cases would extend this opinion

unnecessarily, but many can be found in 64 A. L. R. 995 through 1016, and in Am. Jur., Sec. 386, et seq.

We concede that the majority rule need not be adopted merely because it appeals to and is applied by a majority of the jurisdictions, but the fact that it does so appeal and is so applied is persuasive that it more properly and wisely considers these serious problems and more justly resolves them.

The majority rule repeated over and over is that the mere mailing of the letter containing the notice of cancellation is sufficient to effect a cancellation, as reflected in the decisions from Alabama, Arkansas, Florida, Louisiana, Kentucky, Maryland, New Jersey, New York, New Mexico, Ohio, Oregon, Texas, Washington, Wisconsin, and other states. Possibly the most cogent case applying the majority rule is from Tennessee, which borders Mississippi to the north. It is the case of Cherokee Ins. Co. v. Hardin, 202 Tenn. 110, 302 S. W. 2d 817, decided in 1957. The facts in the Tennessee case are almost the same as in the case at bar and, furthermore, as here, this Tennessee case was the first case decided by the Supreme Court of that state on the identical question before us. Laconically the facts and decision in the Cherokee v. Hardin case are as follows:

The insurer claimed that the policy was cancelled by notice mailed to the insured in accordance with the policy provisions. The insured contended that the notice was never mailed and testified that the notice was never received. As here, the insured sued the insurance company. The insurer produced from its files a carbon copy of the notice, properly addressed, to the Hardins. (The identical steps were taken here). Attached to the carbon copy of the notice was the official receipt of the post office acknowledging receipt by it for transmission to the Hardins of mail. (Again a direct parallel). There was evidence that the insurer's practice was for the

clerk who prepared them to place cancellation notices in the outgoing desk mail basket where they are picked up in due course by the porter, who carries them to the post office for delivery; that the porter procured the Post Office official acknowledgment of receipt of each letter for which a receipt is requested; and that the porter brings the receipt back to the desk of the clerk and it is then, by her, attached to the copy notice which is placed in the file. The porter was not called as a witness. The Court of Appeals affirmed a judgment on a verdict for the Hardins. The insurer brought Certiorari.

The Supreme Court granted Certiorari, reversed the judgment, and sustained the insurer's Motion for a directed verdict, holding (1) that the Hardins necessarily conceded that the cancellation was valid if the notice was mailed, (2) that the insurer was not required to call as a witness the porter who was accustomed to taking the mail to the Post Office; it was only "required that there be evidence that it was taken there", and (3) that, where the mailing is shown by established regular course of business and acknowledgment by the Post Office, a denial by the insured that the notice was received is not evidence that the notice was not mailed.

In conclusion, the far reaching impact of the adoption of the minority rule in this state should be solemnly considered. Sections 146-147 of the Mississippi Code of 1942 are parts of the Negotiable Instruments Law and Sec. 146 provides that where notice of dishonor is given by the holder of a negotiable instrument to an endorser, and the notice is duly addressed and deposited in the post office, "the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails." Under Section 147 notice is deemed to have been deposited in the post office when deposited in any branch post office or any letter box

under the control of the Post Office Department. These sections codify the law merchant. They constitute a legislative recognition that the notice required to hold an endorser liable on a negotiable instrument is effectively given by depositing it in the post office; that this is "due notice, notwithstanding any miscarriage in the mail." We feel that the wise operation of these sections should not be impaired or the beneficence thereof, which has stood the test of time, be challenged by the adoption of the minority rule above set forth under the facts of the case at bar.

In another field, contracts are frequently made between parties separated by vast distance. The problem frequently is to determine at what moment the contract is consummated. In general, the mailing of an acceptance completes the contract, and what happens thereafter will be of no avail. 1 Williston on Contracts (3d ed., 1957), Sec. 81, concludes as follows:

"It was early decided that the contract was completed upon the mailing of the acceptance."

In oil and gas law, the payment by a lessee of delay drilling rentals, under the usual forms of oil and gas leases, reflects also an effective payment when the same is deposited in the mails. 2 Summers, Oil & Gas Law (1959), Sec. 344, states the overwhelming general rule in this way: "An oil and gas lease may provide for the payment of delay rentals by the mailing of a check, draft or other form of remittance to the lessor. In such a situation the postal service is made the lessor's agent to deliver the remittance and proper mailing, although it is never delivered, constitutes payment." There are most likely several hundred thousands of oil and gas leases in Mississippi, most all of which have a standard provision to the effect that delay drilling rentals may be paid by the proper mailing of the payment, and that such mailing constitutes payment of the rental. 2 Summers, Oil and Gas, Sec. 344;

Gloyd v. Midwest Refining Co., 62 F. 2d 483 (C.C.A. 10th, 1933). In addition, there are countless real estate leases pertaining to office buildings, homes, restaurants and divers places of business, not to mention the thousands of insurance policies of every kind and character relating to fire, life, accident, health, in which can be found this standard provision for cancellation. A nullification or modification by judicial decree of these bona fide contracts would be catastrophic.

Though perhaps not in complete accord with Prof. Wigmore's conclusions, the general rules about presumptions are not applicable here, because of the stern fact that the particular terms of the insurance contract governs the rights of the present parties. Threatt v. Threatt, 212 Miss. 555, 54 So. 2d 907 (1951). The notice to appellee was squarely within the requirements of paragraph 16 of the insurance contract, defining what constitutes a notice of cancellation. Therefore, general evidential presumptions are not pertinent to the decision in this case.

It taxes the imagination to conceive how far reaching and profound the adoption of the rule announced by the court below could be upon the legal, economic and social life of the people of Mississippi.

While this may be considered by some to be a harsh rule and while an insured may encounter some danger and harm from having his policy canceled by a written notice from the insurer, he is nevertheless kept safe and harmless by operation of this same rule when by written notice he notifies the insurer of his accident or loss, demanding protection and, as in the words of the testy Hotspur, ''Out of this nettle, danger, we pluck this flower safety.'' So conversely we feel it would be unwise to require the insured to prove receipt of the notice of accident by the insurer.

While we have been reluctant to set aside the findings of a chancellor, still this court has in the past and

should in the future, when it appears that the decree of the chancellor is manifestly incorrect and the determination of the facts or the application of the law is patently erroneous so as to constitute reversible error, reverse the incorrect judgment and enter a proper one here.

In the case at bar it is clear that the record reveals absolutely no actual conflict whatsoever in the testimony as to the mailing of the notice of cancellation; that only by inference or presumption under the minority view can a conflict be asserted; that the appellant complied strictly with the terms and conditions of the policy; that the appellant had the right, under the policy and the conditions thereof, to cancel the policy protecting the appellee; that this cancellation was accurately and properly effected. It follows therefore that the findings of fact by the learned chancellor in the decree entered thereon are manifestly incorrect and should be reversed. Smith v. Cook, 213 Miss. 876, 58 So. 2d 27; Abraham v. Harvey, 245 Miss. 449, 147 So. 2d 639; Griffith's Mississippi Chancery Practice, 2d Ed., Sec. 674, pp. 741-743.

■■ Since there is no positive dispute in the evidence, and furthermore since the evidence consists of authenticated written documents, this court has the right to make its own construction thereof. Northern Assurance Co. v. J. J. Newman Lumber Co., 105 Miss. 688, p. 695, 63 So. 209. This case falls squarely within the rule announced in Smith v. Cook, supra. ■■ It is the duty of this court to reverse the decree based upon findings which are manifestly incorrect, against the overwhelming weight of the evidence, some of which consists of written documents the contents of which are not in dispute.

■■ Some may feel that the majority rule which we adopt in construing the cancellation clause of this insurance contract is obdurate, but we feel that ex-

perience has shown it to be reasonable and just. Moreover, there is involved herein an issue which transcends the immediate interests of both appellant and appellee. ██ ██ The right to contract is a sacred right, and a contract, entered into in good faith, free from fraud, and not in violation of law by the parties, like a man's word, should be respected and enforced. ██ ██ The court should not alter or nullify a contract that is lawful, unambiguous and embodies the agreements of the contracting parties. ██ ██ If it is oppressive, and if generally utilized will not be for the public good, then it is within the province of the legislative branch of our state government to modify, restrict or prohibit, but not unconstitutionally, the contracting rights and powers of its citizens.

For all of these reasons, the findings and decree of the trial court are reversed, and judgment is entered here for the appellant.

Reversed and judgment entered for appellant.

All Justices concur except *Lee, C. J., and Kyle and Rodgers, J. J.,* who dissent.

Lee, C. J., Dissenting:

While I have great respect for the opinions of all my colleagues on the Court, I do not agree with the conclusion which has been reached by the majority in this case. It is therefore with deference that I state briefly my reasons for this dissent.

Joseph J. Nosser on November 14, 1961, purchased from Employers Mutual Casualty Company, through its agent at Natchez, a liability insurance policy on his automobile for a one year period, paying the premium therefor in cash. Subsequently on February 28, 1962, he purchased additional coverage and likewise paid the premium in cash. On April 4, 1962, he was involved in a collision between his car and another. He reported the wreck immediately to the insurance

company, but it refused to defend the claim, saying that the policy had been cancelled, in accordance with its terms, prior to the accident. Nosser was sued by the owner of the other car. He employed a lawyer and the trial resulted in a judgment of $748.48 against him. The insurance company having made known its refusal to recognize its liability under the policy, Nosser brought suit for the sum of $748.48, the amount of the judgment, plus $1,146.14, the amount of damage to his own car.

The defendant pled provision 16, being the cancellation provisions of the policy, the pertinent part of which is as follows: ''This policy may be canceled by the company by *mailing* to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. *The mailing* of notice as aforesaid shall be *sufficient proof* of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period * * * . Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.'' (Emphasis supplied).

Nosser testified as follows: He lived alone at 13 Brentwood Lane, Natchez, Mississippi, the address given in the policy, in a two bedroom house. He was secretary-treasurer of Jitney Jungle in that city. He had a business education and knew the necessity for attention to his mail. All of his mail came to the above address, where he had a mail box. There was no one at his home except the maid, who cleaned up the premises, and she did not touch his mail. He was the only one who ever handled it. Mail was important to him and he gave it his full attention. He opened every piece each day and carefully observed its contents. He

was at home every day from March 14th to and through April 4th, and it was impossible for him to have received through the mail a notice of cancellation from the insurance company and that he either lost or misplaced it. He received no notice of cancellation from the company or the local agent until after he reported the collision to the company and it then told him that the policy had been previously cancelled by mailing the notice to him on March 15th. Besides, the company did not refund the sum of $87, which accrued to him if the policy was in fact cancelled at that time, and it had not done so even up to the time of the trial in August 1962.

The insurance company offered two of its agents, who testified that they had directions from the company to cancel this policy; and that a form of cancellation was prepared in full accordance with the provisions of the above stated cancellation paragraph. The lady employee testified that she carried to the post office a sealed, postage prepaid, properly addressed letter to the appellee, in which the original cancellation notice was enclosed, and delivered it to a postal employee, and that he gave her a receipt for it and then placed the letter in the mail box. The receipt, dated March 15, 1962, stating that it was a piece of mail, and a copy of the alleged cancellation, were introduced in evidence. The witness used the so called window envelopes, that is, the address on the enclosure was folded so that it served, by means of the transparent material in the window, for the address of the envelope. But, on cross-examination, she was sure that she had never folded one so that it slipped out of position or could not be read. She admitted that she had handled many pieces of such mail, and, while she did not remember even half of the names of the people to whom she had sent mail, she was positive that she remembered this one.

Simplifying the issue, the version of the appellant was that one of its representatives posted the letter, which contained the cancellation, with postage prepaid and properly addressed to the appellee and obtained a receipt from a postal employee for "one piece of ordinary mail". On the contrary, the version of the appellee was that he himself received all of his mail for the entire period when cancellation was claimed to have been effected, and that no notice of cancellation came to him through the mails or in any other way.

Thus, on the one hand, an employee of the company (an interested witness) testified that she mailed the letter. The postal receipt was for "one piece of ordinary mail", and in no way identified the contents of the letter. On the other hand, the appellee (an interested witness) testified that he did not receive the letter.

The chancellor was sitting as judge of both the law and the evidence, saw the witnesses as they testified, observed their demeanor, and was in better position to determine the weight, worth and credibility of the witnesses than an appellate court. In a written opinion, he took note that the policy had been amended shortly before the accident; and that neither the local agent nor the company itself, with whom the appellee had dealt, claimed to have given the notice of cancellation. He then found as a fact that no notice of cancellation was in fact mailed to the appellee; that the appellee received no notice; and that, while the unearned premium of $87 had not been returned or tendered even at the trial and that such was not a prerequisite to cancellation, at the same time this failure to refund had evidentiary weight with him that there had been no cancellation.

Professor Wigmore, in his treatise on Evidence, in Section 2519, Vol. 9 3rd ed., has a discussion on the "Execution and Contents of Document: (1) Letters and

Telegrams; Presumption of Arrival. (A)." In (B) pp. 431-433, he says: "In cases involving the application of this presumption, based on due *mailing* in the Government postal machinery, it becomes necessary to distinguish two issues raising different problems as to the sufficiency of evidence, viz. (a) cases where the issue under the pleadings is whether the letter was *received;* (b) cases where the issue under the pleading is whether the letter was *mailed.* (In both issues, we are to have in mind that the procedural effect of a presumption is to require (or justify) the conclusion unless some sufficient evidence to the contrary is introduced (*ante.* Sec. 2491), in which case the issue is before the jury merely on the relative strength of the conflicting evidence).

"(a) Where the issue is whether the letter was *received* by the addressee it often occurs that the addressee's testimony denies the arrival and receipt. This being some evidence to the negative of the issue, the binding effect of the presumption ends, and the issue goes to the jury to decide upon the weight of the evidence. On this point a Court is occasionally found holding that the uncontradicted testimony of the addressee denying the receipt 'entirely negatives the presumption;' and that therefore the jury cannot find for the receipt; which is, of course, unsound because the jury may not believe the denial, as other Courts have pointed out.

"(b) Whether the letter was *mailed,* becomes often the issue under the substantive law; for example, in charging an indorser of a negotiable instrument with a notice of the notarial protest, or in charging an insured with notice of a premium due; here the actual receipt of the letter becomes immaterial; the mailing suffices. But suppose that the addressee testifies in *denial* of the *receipt?* If this denial be believed, then is not the non-arrival of the letter some evidence that

it was never mailed? The presumption above rests upon the supposed uniform efficiency of the postal service in delivering letters duly stamped, addressed, and mailed into its custody; if therefore the efficiency is operating, does not the non-arrival of an alleged letter indicate that such a letter was never given into the postal custody? Add to this, that *the testimony to mailing comes usually from the mouth of persons who are vitally self-interested in proving the fact of mailing,* e.g. a bank cashier who as notary mails notices of protest of the bank's negotiable instruments, *or the agent of an insurer seeking to avoid a liability under the policy?*

"*If therefore the addressee's testimony (also an interested witness) be believed, the non-arrival of such a letter is some evidence that no such letter was mailed;* in short, it becomes essentially a *question which testimony the jury will believe; therefore the case may go to the jury on that issue. This is the correct view, accepted by many Courts;* some of them, however, limit such a ruling to cases where the testimony to mailing *comes from an interested witness;* some of them ask for something circumstantial in addition to the addressee's mere denial." (Emphasis supplied). The author lists in the notes to the above statements a number of cases to justify his conclusion. See also cases on this question cited in 1962 pocket supplement thereto.

The foregoing authority seems to point out clearly that where the evidence on the one hand is that the letter was mailed, but the evidence on the other hand is that the letter was not received by the sendee, this raises an issue for the determination by the jury as to whether the letter was in fact mailed.

Thus because of the reputation of the United States mails for efficiency, according to the authorities, two so-called "presumptions" seem to have arisen, namely, (1) a letter, directed to the sendee at his post office

address, postage prepaid, and mailed, is presumed to be received by the sendee; and (2) if such a letter, so addressed and with the necessary postage is not received, it is presumed that it was never mailed.

This Court appears to be committed to the above doctrine. In the case of Young v. Westphalen & Co., 111 Miss. 765, 72 So. 193 (1916), J. K. Young, Administrator of the Estate of W. L. Young, and other alleged partners, were sued by the appellees for damages alleged to have accrued on account of the breach of a contract. During the trial, J. P. Leake testified that W. L. Young had been a member of the firm of J. P. Leake & Company from June 1908 to May 1909; but that in July 1909 the witness wrote the plaintiffs that Young had withdrawn from the firm and that the witness would continue in business alone, and that he posted this letter in the U. S. mails. The plaintiffs denied receiving this letter. At the close of the evidence the court directed a verdict for the plaintiffs and Young appealed. This Court, in reversing the judgment of the court, granting a peremptory instruction, said: ''While a presumption that a letter, properly addressed, stamped, and mailed, reached the addressee is not conclusive, but may be rebutted by evidence showing that the letter in fact was not received, whether the rebutting evidence is sufficient to overcome the presumption is a question for the jury. See cases cited in notes to Feder Silberberg Co. v. McNeil, 49 L.R.A. (N.S.) 468, and Merchants' Exchange Company v. Sanders, 4 Ann. Cas. 955. It follows, therefore, that in the case at bar *it was for the jury to say whether a letter addressed to appellees, notifying them of the dissolution of the partnership of J. P. Leake & Co., was mailed, and, if mailed, whether it was received.*'' (Emphasis supplied).

In McCreary v. Stevens, 156 Miss. 330, 126 So. 4 (1929), Stevens sued the appellants to recover on three promissory notes, executed by them to Brenard Mfg.

Company, who, in turn, transferred them to appellee allegedly for a valuable consideration, before maturity, without notice of defenses, etc. Under their notice under the general issue, the appellants testified to the receipt of a letter from Stevens in which he stated that he was contemplating the purchase of these notes; that they answered this letter by mail, stating that the payee company had not complied with its agreement, and that they would not pay the notes; but that if the company would carry out its agreement, they were willing to carry out theirs. Stevens, in his deposition, testified that he had no knowledge of any agreement between these parties and had bought these notes and had no notice of any defenses to them. At the close of the evidence the court held that the evidence of the appellants was insufficient to overcome Stevens' proof, and granted the appellee's requested peremptory instruction. The opinion, in reversing the judgment of the trial court, said: ''We think it was reversible error for the court to exclude the evidence of the defendants (McCreary and Metts.) It will be noted that the defendants testified that they received a letter from F. L. Stevens, mailed from Iowa City, stating that he was contemplating buying the notes in question, and that, in answer thereto, they mailed to him, at Iowa City, a letter stating that Brenard Mfg. Company had not carried out their agreement, and that the notes would not be paid. We think, this evidence, under the case of Young v. Westphalen & Co., 111 Miss. 765, 72 So. 193, 194, was sufficient to make a case for the jury's determination, as to whether Stevens received the letter or not.'' Cf. also Threatt v. Threatt, 212 Miss. 555, 54 So. 2d 907 (1951).

In Allied American Mutual Fire Ins. Co. v. Paige, Municipal Court of Appeals for the District of Columbia, 143 A. 2d 508 (1958), the appellees purchased a policy of automobile liability insurance from appellant in Feb-

ruary 1957. The policy contained the following provision with respect to cancellation: "* * * This policy may be canceled by the company *by mailing to the insured named in* Item 1 of the declarations *at the address shown in this policy written notice* stating when not less than ten days thereafter such cancellation shall be effective. *The mailing of notice* as aforesaid shall be *sufficient proof of notice.* The effective date and hour of cancellation stated in the notice shall become the end of the policy period. * * *"

Appellees were subsequently involved in a collision with another car and had to pay for the damages. Appellant refused to make reimbursement because, they said, the policy had been canceled prior to the collision. The trial judge, sitting without a jury, rendered judgment for appellees, from which this appeal was taken.

The only question was whether the policy was effectively canceled. Appellant contended that it mailed to appellees a notice of cancellation prior to the damage. Appellees denied receiving such a notice, and the trial judge found that they did not receive it. Appellant argued that cancellation was accomplished *by simply depositing the notice in the mail,* and that *actual receipt* by the policyholder *was unnecessary.* It was said that several courts, which have passed on the type of provision involved, reached and enforced such an interpretation. The court then assumed, without so holding, that only mailing and not receipt of the notice was required to cancel the policy.

But the appellees urged that appellant's proof was insufficient to establish its claim that it had in fact mailed the notice. The court then pointed out that the testimony in appellant's behalf was furnished by a Mr. Bittner, one of its local agents, who testified that he was familiar with the procedures and customs in both the Washington and Upper Darby offices. He stated that when a cancellation was decided upon, a letter was

typed notifying the policyholder. The original was mailed to the insured, a copy was retained in the company's file, and a copy was sent to the agent who sold the policy. A carbon copy of the notice, supposedly sent to appellees, dated April 26, 1957, was received in evidence. This document bore the stamped notation, ''Original of this letter Enclosed, Sealed and Mailed by (illegible and unidentified) * * * Date 4/26/57''. An orginal postal receipt, which indicated that on April 26 the post office received from appellant a piece of mail addressed to appellees at their Washington address, was admitted in evidence. Mr. Bittner identified both of those exhibits as records and documents kept by appellant in the usual course of its business.

The opinion then said: ''It is argued that appellant's proof of mailing was not refuted merely by appellees' evidence of nonreceipt and consequently appellant should have been awarded judgment. We recognize that some of the cases, which have held that mailing alone effected cancellation, have also determined that proof of mailing is not rebutted by testimony that the notice was not received. * * * Other courts, however, have rejected this approach. As Wigmore has pointed out, the presumption of receipt by the addressee, which is created by proof that mail matter was properly stamped, addressed and delivered to the post office, is founded on the supposed uniform efficiency of the postal service; consequently if the mails are functioning properly, then a failure to receive a certain letter tends also to show that it was in fact never posted. We believe that this is the correct view and accordingly adopt it. Thus evidence of nonreceipt is sufficient to rebut a prima facie case of mailing and create a true issue of fact to be resolved by the trier of facts as to whether the claimed mailing did occur.''

White v. Dixie Fire Insurance Co., 36 S. E. 2d 923 (1946), a Supreme Court of North Carolina case, was

a suit by White to recover on a policy of insurance for damage by "collision or upset", which posed this sole question: Was the policy canceled prior to the alleged damage, and, if liable, the amount?

The cancellation clause was as follows: "This policy may be canceled by the company *by mailing to the insured at the address shown in this policy written notice* stating when not less than 5 days thereafter such cancellation shall be effective. *The mailing of the notice* as aforesaid *shall be sufficient proof of notice* and the effective date and hour of date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing. * * * If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected, and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the insured." (Emphasis supplied).

The plaintiff alleged and offered evidence to show that the upset occurred February 28, 1945; that he mailed the proper notice of the occurrence to the company on the same day; that the defendants declined liability, declaring that it had cancelled the policy on January 8, 1945 and notified the plaintiff of such cancellation; that the plaintiff had not received any notice of cancellation, nor did he receive the unearned part of the premium until a check, dated March 3, 1945, was received several days later; and that he returned the check.

On the trial, the "defendant introduced as its only witness one M. L. Martin, who testified, summarily stating: That he is the countersigning agent at Severn, Northampton County, North Carolina, of the Dixie Fire

Insurance Company under its agency, American Bank & Trust Company, at Suffolk, Virginia; that the policy in question was delivered through the Suffolk agency and countersigned by him; that the notice of cancellation (the same as set forth in Section 9 of the answer) and form of post office receipt No. 3817 were typed in the Suffolk office and brought to him by a Mrs. Boyer, accompanied by Mr. Moore, a bookkeeper, from that office; that he signed and mailed on 8 January, 1945, the notice they brought to him; that he obtained receipt from the Post Master as follows: 'Received from M. L. Martin, Severn, N. C., one piece of ordinary mail addressed to Mr. L. G. White, Route 1, Edenton, N. C. This receipt does not provide for indemnification. U. S. Government Printing Office 5-10325 Post Master,' stamped and postmarked 'Severn, N. C., Jan. 8, 1 P. M., 1945'; that on same day he himself signed a certificate on the bottom of a carbon copy of the notice as follows: 'I hereby certify that on January 8, 1945, I sent by first class mail a notice of cancellation, an exact carbon copy of which appears above, and that form 3817 attached hereto is receipt of same obtained from the U. S. Post Office'; that the copy has been kept in the Suffolk office; that he signed a group of notices, how many he does not show; that the lady brought them the only time she has been to his office; that he did not pay any attention to the number nor the names; that Mrs. Boyer 'brought the notices to me prepared and I signed them and took them to the Post Office in person'; that the premium was sent from the insurance department at Suffolk; that he kept no record of how many policies he handled a month; and that the record is kept in the Suffolk office.

"Defendant further offered in evidence the allegation of the complaint as to receipt and return of check for unearned premium."

After statement of the contentions of the Insurance Company, the opinion said: "We are of opinion, however, that plaintiff's evidence does not present a complete defense of cancellation of the policy as pleaded affirmatively by defendant. It shows no more than that defendant had stated in writing to plaintiff that there was a cancellation of the policy by mailing of notice. On the other hand, such statement is not the only evidence offered by plaintiff. There is evidence that no such notice had been received by him through the mails, and that there had been no return of premium before the plaintiff filed claim on account of damage to his automobile. These are circumstances bearing upon the weight of statements of defendant. If the notice had been mailed, it would ordinarily in the usual course of mails have been delivered to plaintiff. Since *there is evidence that it was not so delivered,* it is a *question for the jury to say, under all the circumstances in evidence, whether the notice was in fact mailed.* Compare Standard Trust Co. v. Commercial Nat. Bank, 166 N. C. 112, 81 S. E. 1074, and Eagles v. East Carolina Ry., 184 N. C. 66, 113 S. E. 512. In the Trust Company case, it is said: 'When evidence is introduced showing that a letter has been "mailed", this established prima facie that it was received by the addressee in the usual course of the mails, and his business, and, when the latter introduces evidence that it was not in fact received, or, not received at the time alleged, such testimony simply raises a conflict of evidence, on which it is the exclusive province of the jury to pass.' " (Emphasis supplied).

As to the contention of the appellant that its evidence was overwhelming, the court said:

"Appellant next contends that even if it be not entitled to judgment as of nonsuit on plaintiff's evidence, the testimony of the witness M. L. Martin is not contradicted and is not in conflict with plaintiff's evidence,

and hence its motion for judgment as of nonsuit at the close of all the evidence should have been granted. As to this, what is said above as to the first contention is an appropriate answer.''

In Verecchia v. De Siato, (American Mutual Life Ins. Co. Garnishee) 45 A. 2d 8 (1946), a Supreme Court of Pennsylvania case, Verecchia had sued De Siato for injuries occasioned from the latter's car, on which the Garnishee carried the liability. It refused to defend. Verecchia recovered a judgment for $4,040, and then sued the Garnishee. The trial judge, at the close of the evidence, directed a verdict for the Garnishee. However, on motion for a new trial on the ground that it should have been submitted to the jury, he sustained the same, and following such trial, the jury found for the plaintiff.

The method of cancellation was as follows: ''This policy may be canceled by the company by mailing written notice to the named insured at the address shown in this policy stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the insurance under this policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.''

The company contended at the trial that the cancellation notice was duly prepared, the covering envelope was properly addressed, postage was affixed and the notice deposited in the United States mail in the due course of office procedure. This contention was presented by the oral evidence of a clerk, who also identified a postage receipt as having been given by the local post office for the notice, although, of course, this *receipt referred only to an envelope and not to its contents.* The insured denied having received the can-

cellation notice. Plaintiff's right to recover from the garnishee therefore depended upon whether the policy had been, in fact, "canceled" by the notice alleged to have been sent.

Refunds of unearned premiums might be made at the time cancellation was effected and, if not then, as soon as practicable after cancellation became effective.

The company held the premium refund at the time of the attempted cancellation, but the opinion said: "However, the policy obliged the company only to make the refund premium as soon as practicable after cancellation had become effective."

The decision of the issue at stake was as follows: "On the state of the record thus indicated, we concluded that *it was for the jury to pass upon the evidence as to whether the notice of cancellation had in fact been duly sent.* The clerk's oral testimony *was circumstantially strongly supported* by a 'document' — *the postal receipt; but this did not withdraw the question of notice from the circle of dispute or controversy.* The insurer had the *burden* of proving the policy had been terminated, and whether the notice had been duly given *remained an issue of fact despite the circumstance that the undoubted weight of the evidence inclined toward the insurance company.* In other words, *the credibility of the clerk's testimony with reference to the notice and the mailing of it was for the jury.* See Osche v. New York Life Insurance Company, 324 Pa. 1, 187 Pa. 1, 187 A. 396; Zenner v. Goetz, 324 Pa. 432, 188 A. 124; MacDonald v. Pennsylvania R. Co., 348 Pa. 558, 36 A. 2d 492." (Emphasis supplied).

The order granting the new trial, and the result thereof, was affirmed.

In Keeling v. Travelers Ins. Co., Hartford, Conn., 67 P. 2d 944 (1937), a Supreme Court of Oklahoma case, Keeling was the beneficiary of an insurance policy on the life of his wife. The policy was paid up. Under

its terms, the maximum loan value could be borrowed; but, in such case, any time *the loan was in default by failure to pay principal or interest, the policy might be canceled upon notice.* "The loan agreement provided notice of cancellation was complete when notice had been mailed. In other words, it was *agreed* between the parties that mere *mailing of the notice constituted notice,* and in consequence, receipt was not a part of the process by which notice was given."

The opinion then said: "This court has heretofore announced that when it is shown that a letter was prepared for mailing, was stamped and put in the mail, a presumption arises that the addressee received the letter in due course. Reeves & Co. v. Martin, 20 Okl. 558, 94 P. 1058; United States Fire Ins. Co. v. L. C. Adam Merc. Co., 117 Okl. 73, 245 P. 885, and other cases. This presumption arises and is indulged because of the known dependability and regularity of the mails. *This presumption is rebuttable.*" The defendant introduced evidence that the letter containing the notice was mailed. The clerk, who so testified, based her testimony on the routine of her tasks and the office records she kept which indicated that she had performed her routine duty.

The plaintiff testified that neither he nor his wife, during her lifetime, received the notice. He explained why he knew his wife did not receive the notice by testifying she was not able during this time to go for the mail; that she could not read (ostensibly compelling her to submit to her husband her mail for perusal); and that he always got the mail. The opinion then said: "Since the presumption above discussed arises because of our confidence in the mails, we must likewise apply it conversely, and when a person swears he did not receive a letter, a presumption arises that it was not mailed. It at least raises a doubt on that point.

"We do not hold that actual receipt of the letter was essential to notice of cancellation; but, *we do hold that when plaintiff testified he did not receive the letter, he thereby raised a question of fact for the jury as to whether it was mailed.* This identical question was so decided in the case of Wilson, v. Frankfort Marine, etc., Ins. Co., 77 N. H. 344, 91 A. 913, 914, and that court said: 'One error in this argument is the assumption that the jury must find that the letter was written and mailed. The presumption arising from the known regularity of the United States mail service is as available for the supposed receiver of a letter as for the alleged sender thereof. *If proof that a properly addressed and stamped letter was posted gives rise to a presumption that it was received in due course* (1 *Wig. Ev. Sec.* 95), *so proof that no letter was received warrants a finding that it was never posted.* If this *plaintiff's testimony denying the receipt of the letter was believed, the jury would be warranted in going further and finding that the letter was not posted.'* See, also, 22 C. J. 102, Sec. 44, note 50."

Because the issue should have been submitted to the jury, as, the opinion said, the jury "may well have chosen to believe the letter was not mailed from the character of the insurance company's clerk's testimony." (Emphasis supplied.)

In Jensen v. Traders & General Ins. Co., 296 P, 2d 434 (1956) DCA California, after the Jensens obtained judgment against one Di Matteo, who carried a liability policy with Trader, etc., both of them brought this suit against the Insurance Company for reimbursement.

The Insurance Company pled the cancellation clause in the policy as follows: "This policy may be canceled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy *may*

*be canceled* by the company *by mailing to the named insured at the address shown in this policy written notice* stating when not less than five days thereafter such cancellation shall be effective. *The mailing of notice* as aforesaid shall be *sufficient proof of notice* and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.''

The company also adduced evidence tending to show that it mailed notices of cancellation to the policyholders (John Di Matteo and his son Jim) on August 10, 1951. The person in charge of its cancellation department did not specifically recall the handling of the papers in question. Based upon defendant's office system and practice, she deduced from carbon copies of cancellation notices to the Di Matteos (which bore her initials) and from two post office receipts in the defendant's possession, that the originals of these two notices were mailed in sealed envelopes properly addressed, with sufficient postage affixed. *These postal receipts did not indicate the nature of the contents of the envelopes.* A postal official who described the use and purpose of such a receipt explained it is not a receipt for registered mail; it *serves solely as an acknowledgment of the receipt into the U. S. Mail of a piece of ordinary mail addressed to a person named on the receipt.*

In holding that the Insurance Company was not entitled to a directed verdict, but that the evidence was sufficient to make a conflict to be resolved by the jury, the Court said: ''This was competent evidence of mailing but not the only evidence on that subject. Plaintiffs John and Jim Di Matteo testified positively that no cancellation notice was received and that they had no inkling of any cancellation until three months later, when the accident occurred and they reported it to the insurance company. A circumstance tending inferential-

ly to support their testimony is the fact that the Di Matteos sought no new insurance and continued to make the monthly payments on their car to the auto dealer who sold it to them on a conditional sales contract which included an item by way of premium upon the policy in each monthly installment. There was the added circumstance that the father, who made the down payment on the car, signed the sales contract and joined in the application for the policy, would not allow the son, who was under 21, to drive without insurance coverage.

"This furnishes a substantial basis for an inference that notices of cancellation were not mailed, and thus presented a conflict in the evidence to be weighed and resolved by the jury. 'If proof that a properly addressed and stamped letter was posted gives rise to a presumption that it was received in due course (1 Wig. Ev. Sec. 95), so proof that no letter was received warrants a finding that it was never posted. If this plaintiff's testimony denying the receipt of the letter was believed, the jury would be warranted in going further and finding that the letter was not posted.' Wilson v. Frankfort Marine, Accident & Plate Glass Ins. Co., 1914, 77 *N. H.* 344, 91 A. 913, 914. See also Calkins v. Vaughan, 1927, 217 *Ala.* 56, 114 So. 570, 574; Matlock v. Citizens' Nat. Bank, 1926, 43 *Idaho* 214, 250 P. 648, 649, 50 A.L.R. 1418; Hobson v. Security State Bank, 1936, 56 *Idaho* 601, 57 P. 2d 685, 688; Meyers v. Brown-Forman Distillery Co., 1942, 289 *Ky.* 185, 158 S.W. 2d 407, 412; Keeling v. Travelers Ins. Co., Hartford, Conn., 1937, 180 *Okl.* 99, 67 P. 2d 944, 945; Keller v. Provident Life & Accident Ins. Co., 1948, 213 *S. C.* 339, 49 S.E. 2d 577, 531; Cisco Mut. Life Ins. Assn. v. Ferguson, *Tex. Civ. App.* 1928, 8 S. W. 2d 546, 547-548; Texas Mut. Life Ins. Assn. v. Burns, *Tex. Civ. App.* 1936, 92 S.W. 2d 469, 470; Border State Life Ins. Co. v. Noble, *Tex. Civ. App.* 1940, 138 S. W. 2d 119, 122; IX Wigmore on Evi-

dence, 3rd Ed., pp. 432-433, Section 2519. In New York this principle has been applied in a case in which the testimony of mailing came from an interested witness, Kingsland Land Co. v. Newman, 1896, 1 App. Div. 1, 36 N.Y.S. 960; rejected in a case in which the evidence of mailing came from a disinterested witness (a notary's certificate of protest) and was controverted merely by the addressee's denial of receipt. Trusts & Guarantee Co. v. Barnhardt, 1936, 270 N. Y. 350, 1 N.E. 2d 459, 461-462, criticised in IX Wigmore on Evidence, supra, at pp. 433-434, note 4. The evidence in our case meets all of the requirements of the rule, even as limited in New York.''

South Carolina seems to be committed to the principle that proof of mailing is rebutted by proof of non-receipt, and, in such a case, the issue is for the jury to say whether the letter was mailed. Keller v. Provident Life and Accident Ins. Co., 49 S. E. 2d 577 (1948) a Supreme Court decision, citing its own cases, Texas and Idaho cases, and 50 A. L. R. 1418. Compare Matlock v. Citizens' National Bank, 250 P. 648 (1926), a Supreme Court of Idaho case. See also Midwestern Ins. Co. v. Cathey, 262 P. 434 (1953), a Supreme Court of Oklahoma case, where the addressed envelope, containing the notice was returned to the sender, undelivered, with the notation of the postmaster ''not here'' and ''unknown at address'', and the proof of mailing was held to be sufficient.

The majority opinion refers to certain citations in American Jurisprudence and Corpus Juris Secundum concerning the sufficiency of mailing to comply with provisions for notice. Of course, it has been impossible for me, in the short time for research, to read any considerable number of these cases. Confusion creeps in here just as Prof. Wigmore has pointed out. From a number of these cases, it seems clear that proof of mailing, with nothing else, is sufficient to make out a

prima facie case. If the mailing is not controverted, it entitles the proponent to judgment. But, if the receipt is denied, there is an issue for the jury, or the trier of facts. There are literally myriads of these cases which apply this rule.

The majority opinion concedes that North Carolina and Minnesota are at variance with its views. It lists Louisiana as being in the large number of States which support its view. Illustrative of what I have just said above is Paz v. Implement Dealers Mutual Ins. Co., 89 So. 2d 514, from that State, which is based on the view to which I subscribe. The majority opinion also lists Alabama as being on its side. Yet, in Boston Insurance Co. v. Rash, 82 So. 2d 177 (1955), from the Supreme Court of Alabama, cited by the majority, the opinion said: "There is an agreement that the notice required by the policy was given in the manner and form required." The opinion went off solely on the failure to return the unearned premium at the time of cancellation; and the court held that this did not vitiate the cancellation.

In several of the cases which I have cited, the cancellation provisions have been almost identical. Relatively speaking, they are few in number; but it is unusual that so many cases can be found with such almost exactitude both on the law and the evidence.

It is said that, under oil and gas contracts, the mere mailing of the yearly rentals on the part of the lessee of an oil and gas lease keeps alive the rights of the lessee and that this method is recognized throughout the country. Hence, it is argued that the rule in that respect should be persuasive in the construction of the contract now before the Court. I do not think that these two matters run in parallel lines. In the instance of the oil and gas lease, the right to declare and seek to cancel because of nonpayment may, of course, arise; but a cancellation of the lease does not thereby auto-

matically result. In this case, the contention is that mere mailing, although disputed, has already effected the forfeiture and extinguishment of an existing right, and that the company can retain the unearned premium until it gets ready to return it. But forfeitures do not meet such a royal welcome in the courts of this State.

If the position of the appellant, as sanctioned by the majority opinion, becomes the law of this State, it will license insurance companies to issue and amend policies, and, when claims are reported under those policies, if one of its employees can go through the mental gymnastics of deposing to an incident of mailing notices, such as we have in this case, the companies themselves will become the sole judge and jury to affect the denial of the claim. The policyholder, although he has received no notice of cancellation through the mail or otherwise, may well forever keep his peace, go to a justice of the peace, and institute suit for the recovery of the unearned premium which the company still holds in its coffers. He has had no chance to protect himself by the purchase of other insurance. I can not get my consent to approve such a one-sided contract in view of the past pronouncements of principles by this Court, to my mind, determinative of this question.

Besides, I called attention, in the statement of facts, to the convenient memory of the appellant's only witness who said that she mailed the letter, and who had never made a mistake in inserting enclosures in window envelopes. In addition, although she had mailed many letters, and frankly confessed that she could not remember even half of the names, yet was insistent that she definitely remembered the letter to Nosser. The chancellor saw her and Nosser both testify. After observing the demeanor of the witness, he was in better position to decide what the truth was in this matter than the members of the court, reading the cold record. And as the trier of fact, he SOLEMNLY FOUND THAT

THE LETTER WAS NOT MAILED! I think it is a mistake for the Court here to substitute its appraisal of the worth of the evidence to the exclusion of that which was solemnly determined by the Chancellor. I would affirm the decree of the trial court.

*Kyle and Rodgers, JJ.*, joins in this dissent.

## ON SUGGESTION OF ERROR

ETHRIDGE, J.:

Appellee and the amicus curiae erroneously argue that our original opinion disregarded the evidential rule that testimony by an addressee that he did not receive a letter creates a presumption that it was not in fact mailed, and presents to the jury an issue on the question of mailing. 164 So. 2d 426. Clause 16 of the insurance policy provided that it could be cancelled by the company by mailing to insured a notice of cancellation, and "mailing of notice . . . shall be sufficient proof of notice." The proof of mailing was very strong and in fact uncontradicted. It was much more than a simple statement that the notice was mailed. There was testimony by appellant's clerk, describing the reasons she remembered this particular mailing and the fact of mailing; and documentary evidence in the form of a certificate of mailing executed by the post office department, dated the same day as the notice of cancellation. ▮▮ The mailing of a notice under clause 16 is sufficient to effect a cancellation. Actual receipt by insured of it is not a condition precedent to termination of the policy by insurer. ▮▮ The unequivocal and undisputed testimony of the mailing, both oral and documentary, constituted proof of the fact of mailing. It removed any presumption of law. The presumption disappeared with the presentation of this undisputed evidence of mailing. 9 Wigmore, Evidence (3d ed. 1940), § 2491. No real presumption is meant to be predicated on evidence of nonreceipt, but it may create a sufficient

inference for the jury of nonmailing, where the evidence of mailing is unconvincing or indefinite. That is not the case here. Wigmore recognizes that there must be "some sufficient evidence to the contrary" of mailing, in order to make a jury issue. Ibid., § 2519.

Certain Mississippi cases cited by appellee are not inconsistent with the decision here, since there the evidence of mailing was no more than the oral testimony of the purported sender that the letter in controversy was mailed. Moreover, these cases did not involve a contractual provision in an insurance policy for cancellation by mailing. Young v. Westphalen & Co., 111 Miss. 765, 72 So. 193 (1916); McCreary v. Stevens, 156 Miss. 330, 126 So. 4 (1930); see Threatt v. Threatt, 212 Miss. 555, 54 So. 2d 907 (1951).

In the instant case, there was no denial that such notice was mailed. The oral testimony of mailing was corroborated by the post office receipt. It was agreed that mailing should constitute proof of notice. To say that the mere testimony of the addressee that he did not receive the notice created a permissible inference that the letter was never mailed, would require us to disregard not only the explanatory testimony of the insurer's clerk, but the unimpeached, uncontradicted, written official acknowledgment of the post office that it received this letter for transmission by mail to the addressee at his correct address. Any inference of non-mailing under a record of this type is too remote and of insufficient probative value to make a jury issue on whether the notice was actually mailed. Cherokee Ins. Co. v. Hardin, 202 Tenn. 110, 302 S.W. 2d 817 (1957).

Further permitting an inference of nonmailing from a mere denial of receipt, where the evidence of mailing is of the weight indicated, would be little different from a rule that, even under the provisions of clause 16, nonreceipt of the notice defeated the cancellation, and this would be contrary to the terms of the contract.

Our reading of the authorities elsewhere convinces us this decision is in accord with the better reasoned cases, which appear to represent a majority view. See Risjord, Construction of Terms of Liability Insurance with Specific Reference to the Cancellation Condition, 38 Tex. L. Rev. 198 (1959).

Suggestions of error overruled.

*Gillespie, McElroy, Brady, and Patterson, JJ.,* concur.

LEE, C. J., Dissenting:

Lack of time prevented as complete research as I would have liked to disclose in the dissent against the majority opinion in this case. At the outset I cited the Wigmore rule on Evidence, Section 2519, Vol. 9, 3rd ed., and our three Mississippi cases, namely, Young v. Westphalen & Co., 111 Miss. 765, 72 So. 193; McCreary v. Stevens, 156 Miss. 330, 126 So. 4; and Threatt v. Threatt, 212 Miss. 555, 54 So. 2d 907.

In the Mississippi cases, this Court committed itself to what has become known as the Wigmore Rule, which, simply stated, is: A letter properly addressed, with postage prepaid, if mailed, is presumed to be delivered to the addressee; but, if such properly addressed envelope is not received by the addressee, it is presumed that it was not mailed. Consequently, where the evidence for the insurance company is to the effect that the cancellation of a policy, enclosed in an envelope and properly addressed, postage prepaid, is mailed to the policyholder, but the evidence for the policyholder is to the effect that the envelope, containing the cancellation, was not received by him, it is for the jury or trier of fact to say whether the notice was in fact mailed and the policy therefore cancelled.

In addition to the above named authorities, I cited Allied American Mutual Fire Ins. Co. v. Paige, Municipal Court of Appeals for District of Columbia, 143 A. 2d 508; White v. Dixie Fire Ins. Co., 36 S. E. 2d 923, a Supreme Court of North Carolina case; Verechia

v. DeSiato (American Mutual Life Ins. Co., Garnishee), 45 A. 2d 8, a Supreme Court of Pennsylvania case; Keeling v. Travelers Ins. Co., Hartford, Conn., 67 P. 2d 944, and Midwestern Ins. Co. v. Cathey, 262 P. 434, Supreme Court of Oklahoma cases; Jensen v. Traders & General Ins. Co., 296 P. 2d 434, D.C.A. California; Keller v. Provident Life & Accident Ins. Co., 49 S. E. 2d 577, a Supreme Court of South Carolina case; and Matlock v. Citizens National Bank, 250 P. 648, a Supreme Court of Idaho case. The principal in those cases was the same as here under consideration. The cancellation provision was either identical or practically so with the provision in the present case. Besides, factually, it may be said that they were the same kind of cases as the one now being considered. All of the above authorities, in my opinion, uphold the rule which I have been seeking to maintain.

An excellent amicus curiae brief has been filed on behalf of the appellee on suggestion of error. In addition to the cases heretofore cited, our attention has been called also to Jensen v. Traders & General Ins. Co., 141 Cal. App. 162, 296 P. 2d 434; Ireland v. Manufacturers & Merchants Indemnity Co., 298 S. W. 2d 529, a Missouri case; Griffin v. General Accident, Fire & Life Assur. Co., 116 N. E. 2d 41, and Grimes v. State Auto Mut. Ins. Co., 118 N. E. 2d 841, Ohio cases; and Allstate Ins. Co. v. Buck, 100 S. E. 2d 142, a Georgia case. These latter cases followed the Wigmore Rule. Adding these to those, previously cited, gives an aggregate of eleven cases.

On the other hand, a critical analysis of the citations in the majority opinion, especially 64 A. L. R. 2d 1000-1002, in my opinion, strips the rule adopted in the majority opinion, down to only five states, to-wit: Service Fire Ins. Co. of New York v. Markey, 83 So. 2d 855, a Florida case; Boyle v. Inter Insurance Exchange of Chicago Motor Club, 82 N. E. 2d 179, an Illinois Appeal

case; Womack v. Fenton, 100 A. 2d 690, a New Jersey case; Cherokee Ins. Co. v. Hardin, 302 S. W. 2d 817, a Tennessee case; Aetna Ins. Co. v. Aviritt, 199 S. W. 2d 662, and Anchor Casualty Co. v. Crisp, 346 S. W. 2d 364, Texas cases. More than that, the editorial comment in 64 A.L.R. 2d at page 986, frankly says: ''Cases dealing with questions of evidence such as whether or not the notice has been mailed by the insurer or has been received by the insured or whether or not a presumption of the receipt of notice arises from the mailing thereof and *whether such presumption may be rebutted by testimony that the notice was not received, are not within the scope of this annotation.*'' (Emphasis supplied.)

As I gather from the cases, drawn from twenty-four states, listed at pages 1000-1002 of 64 A. L. R. 2d, supra, except for the five states cited in the majority opinion, supra, the question involved in this controversy did not even appear in the other cases.

The response of the majority is that there was no denial of the mailing. How, pray tell me was Nosser to deny the mailing other than by his sworn testimony that it was not delivered because, if it had been mailed, it would have been received by him! He was not present, of course, when the alleged mailing occurred. Besides, the postoffice receipt was for ''a piece of ordinary mail'' and not for an envelope, containing the cancellation of this insurance policy. In other words, the majority opinion construes the provisions of this policy to mean that an employee of an insurance company can become witness, judge, jury, and executioner. Thus the statement of a witness for the insurance company becomes the end of the law — that voice is a ''thus saith the law''.

I do not see how a policyholder, with such a provision as the one in the policy, considered by the Court, can feel secure that his insurance is in force and effect

unless he has the company to verify to him every ten days that his is still effective. Such precaution would seem to be necessary because, if an employee will testify that notice of cancellation was mailed to the policyholder, in an envelope, at the address stated in the policy, with proper postage, and the employee will produce a postal receipt for a piece of ordinary mail, then, after ten days have elapsed since that time, the policyholder will have no protection even though he has never received any notice through the mail that his policy has been cancelled. As of today, unless the policyholders in this company have taken precaution similar to what I have said above, they can not be certain that they even have insurance.

I do not think that our people should even be permitted, much less required, to live under such a onesided contract.

This further dissent is recorded in the sincere hope that the legislature, at its next session, will give this question attention and correct a gross inequality, as I see it, in the field of liability insurance.

*Kyle, Rodgers and Jones, JJ.,* joins in this dissent.

RODGERS, J., Dissenting:

I concur in the dissenting opinion of Chief Justice Lee. It is obvious to me, from the authorities cited in the briefs and carefully documented in the opinions written in this case, that this Court had a choice as to whether or not it would follow the rule that the failure to receive a letter raises a rebuttable presumption that the letter was not mailed, and presents a question for the determination of the jury; or whether we would follow the rule that testimony to the effect that the letter was mailed was sufficient to establish the fact of mailing notice as a matter of law. I feel that the latter rule is not to the best interest of the people of

Mississippi who purchase insurance in good faith and that the former rule is better since it leaves the question open for the determination of the jury.